(No. 22472.—

THE PEOPLE *ex rel.* R. S. Wangelin, County Collector, Appellee, *vs.* THE WIGGINS FERRY COMPANY, Appellant.

*Opinion filed June 20, 1934.*

KRAMER, CAMPBELL, COSTELLO & WIECHERT, for appellant.

LOUIS P. ZERWECK, State's Attorney, for appellee.

Mr. JUSTICE HERRICK delivered the opinion of the court:

The appellee, as county collector of St. Clair county, applied to the county court of that county for judgment for delinquent real estate taxes for the year 1932 assessed in the sum of $21,631.04 against the real estate of appellant. Of such tax $9560.59 was paid by the appellant and objections were filed to the sum of $12,070.45. The first and seventh objections charge, in substance, that the appellant has paid all of the tax for which it is legally liable and that the assessed valuation of such real estate was so much greater than its fair cash market value as to be fraudulent and illegal; that other property of like kind and character in the same locality was assessed at its fair cash market value while the appellant's property had been assessed more than twice its fair cash market value; that the assessors had not exercised their honest judgment in assessing the appellant's property but had arbitrarily, willfully and intentionally assessed its real estate at a grossly excessive value in utter disregard of the true value thereof, with the result that there was an unjust discrimination against the appellant, in violation of section 1 of article 9 of the State constitution and the fourteenth amendment to the Federal constitution. The county court overruled the objections and entered judgment for the amount of the taxes in controversy. From that judgment this appeal is prosecuted.

It is stipulated that the People have made out a *prima facie* case. The appellant introduced evidence, and the ap-

pellee introduced in rebuttal the evidence of two members of the board of review and no other evidence. It was stipulated on the trial that in 1932 the appellant filed a complaint against its assessment, appeared before the board of review, presented evidence of a character similar to that introduced in the trial before the county court, and exhausted all its legal remedies before the board of review in an effort to get the assessment reduced to the amount claimed to be the fair cash market value of its property, and that there was no question raised in the present proceeding as to any alleged failure of the appellant to exhaust its remedies before such board.

The board of review refused to lower the assessment on any of the appellant's real estate. The aggregate assessed value of the real estate involved is $339,910. The value fixed by the owner is $157,120, that amount representing forty per cent of the fair cash market value thereof. The difference in dispute ($181,890) is distributed amongst the different lots and acreage property in question. The property in question is on the island in East St. Louis near the Eads bridge. All the lots lie north while some of the acreage lies south of the bridge. North of the Eads bridge, on the river front, there is one small elevator. North of the elevator and towards the head of the island there are two sand companies. There are no other industries on the property. Formerly the Chicago and Alton railroad and the Wabash railroad had freight houses there, but these have been abandoned. There are about twenty-five old tenement houses, with a rental value varying from $6.25 to $25 per month, scattered over the property. The houses have deteriorated and some are being wrecked. No issue as to the value of the improvements on the property is raised. No houses have been built in the neighborhood of the property during the last twenty-five years. The principal use of the property is for railroad purposes. Such use is much less than it formerly was. The tendency in

the neighborhood at present is towards the abandonment of the railroad property now in use rather than the acquisition of new property. There has been no development north of the Eads bridge for many years that would make the property desirable for railroad purposes. There is no market for the property at the present time. Its chief value at this time is possibly for industrial sites.

A witness for the appellant who had been employed in the real estate and tax department of the appellant since 1905 identified a map of the property and also a complete list of the property prepared by him, itemized as to each particular tract by proper legal description, the streets on which the property is located, the assessment per front foot and the total assessment of each tract, also the value per front foot as fixed by the owner and the total value of each lot and parcel as fixed by the owner. Both the exhibits were introduced in evidence. The witness described the property in detail, and stated that in his opinion the arbitrary value fixed by the owner was in excess of forty per cent of the fair cash market value at the time it was assessed. No sales of property have been made in this immediate neighborhood for several years prior to the hearing in the county court.

The appellant's exhibit 3 shows a comparative assessed value between certain property of the appellant and other property in the immediate vicinity owned by others. Too much space would be taken to undertake to go into a comparison of these assessed valuations in detail. Two examples will be sufficient. A lot owned by the appellant is assessed at $2630; a similar lot just across the alley, which lot is owned by another, is assessed at $1130. Another lot of the appellant is assessed at $1980, while a like lot owned by another, which lot is immediately across the alley, is assessed at $840. Other witnesses who were disinterested and qualified men of affairs in the community and well acquainted with the appellant's property and with property

in the immediate neighborhood of such property, testified as to the value of the appellant's property, and that the values as fixed by the owner were in excess of the fair cash market value of such property. One of such witnesses testified that an estate with which he was familiar owned fifteen or twenty lots in the immediate vicinity of the appellant's property. He was the business adviser of the widow of the decedent, and on his advice the widow had ceased paying taxes on the lots and they have been forfeited to the State. Another witness was vice-president of the Columbia Terminal Company. He knew the property in question. His company owned 23,000 square feet in the neighborhood of the appellant's property. His company had offered to sell the property for one dollar but was unable to find a buyer and had abandoned the property and ceased paying taxes on it.

Evidence was offered of the customary ratio between the assessed value and full value. The evidence shows that both in 1931 and 1932 the State Tax Commission, in assessing railroad property and capital stock, placed the assessed value as thirty-seven per cent of the actual value of the property, in accordance with rule 11 of the tax commission. The testimony of a member of the board of review of St. Clair county for the nine-year period from June 1, 1922, to June 1, 1931, was, that the ratio the board used during that period was thirty-seven per cent. The clerk of the present board testified that the custom of the board was to assess the property at forty per cent of what the board considered to be its actual value. None of the evidence shows that the assessed value of real estate as fixed by the board was in excess of forty per cent of the full value. Another witness who had made an extensive study of the ratio of assessed value to market value as shown by the deeds recorded in the recorder's office of St. Clair county testified upon the subject of ratio of values. He did not use any transactions where the sales were stated

to be for a nominal consideration or where sales were made under court decrees or judgments, but used only the transactions where the consideration named in the deed was apparently the real consideration. Of these transactions in 1931, 195 showed the ratio of assessed value to full value for all these transactions was thirty per cent. Taking these same transactions, with the exception of three properties upon which there had been improvements made, and applying the consideration of 1931 as against the assessment in 1932, the ratio was thirty-one and five-tenths per cent. Using the same process for 1933, the ratio was thirty-two and five-tenths per cent.

One of the members of the board of review testified that he was familiar with the property in question and had been for a good many years; that he knew the use of the property; that it was not desirable for residential purposes; that the only use to which it might be put was for industrial or railroad purposes; that several of the railroad warehouses on the river front had been abandoned and that the general trend of the railroad business was away from the island; that the table of comparative values was before the board at the hearing on the complaint made by the appellant, and that the board checked quite a lot of pieces owned by other persons against that owned by the appellant; that such property was substantially the same kind and suited for the same or similar purposes as the appellant's property; that he did not know of any industries that had located on the river front or on any of the property in question within the last five years; that all the property was in one body; that he did not think anyone was able to buy a foot of it before the last years of the depression. In his opinion he did not think any value could ever be put on it; that there were no sales in that territory, and he did not know how a cash value could be put on the property at the present time; that in his opinion the assessed value represented at least forty per cent of the

fair cash value of the property. The other member of the board of review who testified stated that he knew the property and territory in a general way but there was some of the property he did not know. He further stated that perhaps the assessment might be a little too high, to be frank; that the value of the river front property, if anything, was a little low, while the property further away from the river was too high; that he knew there was a diminution in the barge business and that a large number of the warehouses along the river front had closed. He did not know the property was not suitable for residential purposes but stated that there had been little industrial business—in fact, there had been a decrease in the railroad business in recent years. He based his opinion of the value of the river front property upon the fact that the property was opposite the fourth or fifth largest city in the United States, and that it would be a port, possibly, of deep waterways some day in the future.

No question is made in the record of the procedure in the case, or that the property owner, upon application for judgment for delinquent taxes, may defend on the ground that the assessment was deliberately or fraudulently discriminatory against him. It is the law that the assessed value of property for taxation purposes cannot be impeached merely because of the difference of opinion as to values between the assessing bodies and the court. It is, however, the law that if the evidence shows that the property has been assessed in such an excessive amount over its actual market value that the assessed valuation must have been known to the assessing officers to be excessive and unfairly made, the assessment is subject to review by the court. (*People* v. *Stewart,* 315 Ill. 25.) It is not necessary, in order that an assessment may be set aside, that fraud in its generally accepted meaning be shown, but if the facts show that the taxing authorities have assessed the property for taxation purposes at a valuation grossly in excess of

its market value, and that such assessment was deliberately and willfully made, such conduct amounts to a constructive fraud, and the courts will intervene to protect the tax-payer against the wrong undertaken to be perpetrated against him. *Pacific Hotel Co.* v. *Lieb,* 83 Ill. 602.

The provision of section 1 of article 9 of our constitution to the effect that the General Assembly shall provide such revenue as shall be needful by levying a tax by valuation, so that every person or corporation shall pay a tax in proportion to the value of his property, clearly indicates that it was the intention of the framers of our present constitution that there should be an equality of taxation according to the value of the property taxed; that one class of property within the municipality should not be assessed at one value while the same class of property similarly situated, in the same community, should be assessed at a grossly higher value. Uniformity in taxation by this method is thwarted. The command of the constitution is equality and uniformity of taxation. All laws relating to taxation and the enforcement thereof by taxing bodies must yield to this supreme command. The assessment of all property, regardless of whether it is owned by an individual or by a corporation, must, therefore, be made at its proportional value. This rule applies not only to the fair cash market value of the property, but where a factor has been adopted by a taxing body or taxing officials by which property is listed for taxation purposes below its market value, the same factor must be applied equally to other property in order to secure uniformity of taxation. *People's Gas Light and Coke Co.* v. *Stuckart,* 286 Ill. 164; *Bistor* v. *McDonough,* 348 id. 624; *People* v. *Orvis,* 301 id. 350; *Greene* v. *Louisville and Interurban Railroad Co.* 244 U. S. 499, 61 L. ed. 1280; *Sioux City Bridge Co.* v. *Dakota County,* 260 id. 441, 67 L. ed. 340; *Brinkerhoff-Faris Trust Co.* v. *Hill,* 281 id. 673, 74 L. ed. 1107.

The duty to assess the full valuation cannot be supreme unless applied to all tax-payers alike, and where it is impossible to secure both the standard of full value and the uniformity and equality required by section 1 of article 9 of our constitution the command of the constitution must be adopted as the fundamental law. *People's Gas Light and Coke Co.* v. *Stuckart, supra; People* v. *Orvis, supra; Bureau County* v. *Chicago, Burlington and Quincy Railroad Co.* 44 Ill. 229; *Sioux City Bridge Co.* v. *Dakota County, supra; Brinkerhoff-Faris Trust Co.* v. *Hill, supra.*

The great preponderance of the evidence in the case shows that the value placed upon the appellant's property for taxation purposes was far in excess of that upon property of like kind and character and similarly situated. It is apparent that the valuation is based upon a speculative future value upon the happening of an uncertain event, and the value of the property was not based upon what the property would fairly and reasonably sell for at a present fair sale. It is obvious that the valuation placed upon the property was an arbitrary one, willfully made, and is not a mere error in judgment but amounts to a constructive fraud upon the tax-payer. (*People* v. *Stewart, supra.*) The appellant has paid a tax computed upon the basis of forty per cent of the actual fair cash market value of the property, and the collection of any greater amount of tax is not justified by the record. The county court erred in not sustaining the first and seventh objections of the appellant.

The judgment of the county court is reversed and the cause is remanded to that court, with directions to sustain the first and seventh objections of the appellant.

*Reversed and remanded, with directions.*