(No. 26837.—Reversed and remanded.)

THE PEOPLE *ex rel.* John Toman, County Collector, Appellee, *vs.* CHICAGO UNION STATION COMPANY, Appellant.

*Opinion filed March 16, 1943—Rehearing denied May 18, 1943.*

154

FRANK J. LOESCH, EDWARD M. BURKE, and DAVID L. DICKSON, for appellant.

THOMAS J. COURTNEY, State's Attorney, (MARSHALL V. KEARNEY, JACOB SHAMBERG, and JOHN T. FITZGERALD, of counsel,) for appellee.

Mr. CHIEF JUSTICE STONE delivered the opinion of the court:

This appeal involves the validity of a tax assessed for 1936 against appellant's property in the city of Chicago, known as the Union Railway Station. The amount of the tax, $1,728,070.40, was levied on an assessed valuation of $18,152,000, computed as follows: Main track right of way and improvements on right of way, $5,408,600; second track, $4,406,400; side track and turnouts, $8,337,000. The appellant paid, under protest, 85½ percent of the total tax, or $1,477,500.19. It concedes liability for 60 per cent of the entire tax but claims refund to 25½ per cent. Its objections go to 40 per cent of the entire tax, on the ground that the valuation placed on the property was arbitrary, discriminatory and so grossly excessive as to be illegal and void to the extent of 40 per cent of such valuation.

Appellant filed twenty-eight objections centered about the following points: (1) The Tax Commission systematically, intentionally and arbitrarily placed on the property an excessive valuation without any reasonable basis in fact, and such valuation constituted constructive fraud in violation of the fourteenth amendment and the commerce clause of the United States constitution, and section 2 of article II and sections 1, 9 and 10 of article IX of the Illinois constitution, and likewise violated the statutes of this State. (2) The Tax Commission used an illegal basis in arriving at the assessed value in that it considered factors that could not be reasonably or legally considered in fixing the assessed value, and refused to recognize that over $33,000,000 of

the original expenditures represented not property of appellant but taxes, engineering, changes of street grades, relocation of tracks of other railroads, building of bridges, and the like, which were required under an ordinance of March 23, 1914. (3) The Tax Commission refused to consider obsolescence or depreciation accrued but based its value in part on a valuation made in 1927 by the Interstate Commerce Commission. (4) The valuation for taxing purposes placed by the commission on the appellant's property was arbitrary and grossly excessive as compared with the values placed by it on other like corporations in the State and in Cook county, and a debasement percentage was used which resulted in violation of constitutional provisions requiring uniformity of taxation. And (5) it is earnestly argued that appellant is not a railroad as that term is generally used, and that its property should be assessed as other property in Cook county is assessed.

Appellee urges on the other hand that appellant is a railroad company and was properly assessed as such by the Tax Commission which made its assessment on all evidence available to it, and on the same basis as that used in the case of all other railroads; that it was bound to and did use three factors, i.e., market value of stocks and bonds, capitalized earnings, and depreciated reproduction costs, and that these factors, when used with an honest exercise of judgment, resulted in a proper and reasonable assessment.

. Appellant urges that while its property is taxable by the Tax Commission as railroad property, the formula and method of valuation, generally used as applicable to railroads, are wholly inapplicable to it for the reason that its property, while having certain characteristics of a railroad, has greater similarity to other parcels of improved commercial real estate in the city of Chicago, all of which characteristics were ignored by the Tax Commission and an arbitrary formula, as applied to railroads generally,

was used. In support of this contention appellant urges: (1) that it is unlike a railroad corporation; (2) it is not engaged in any kind of transportation and is the only so-called railroad in Illinois not so engaged, and (3) it receives only passenger business, and no freight.

Appellant is a corporation chartered under an act called "The Union Depot Act," enacted "for the formation of corporations for the purpose of constructing, maintaining and operating union depots, and to repeal" other acts relating thereto. This act was passed in 1913. (Laws of 1913, p. 196; Ill. Rev. Stat. 1939, chap. 114, p. 2598.) Section 1 of that act provides that in order to facilitate the public convenience and safety in the transmission of goods and passengers from one railroad to another, any number of persons, not less than five, or any two or more railroad companies of themselves with individuals, may form a corporation for the purpose of "constructing  *  *  *  a union station for passengers or freight depots, or for both," etc. This section also limits the life of the corporation and the amount of its stock.

Section 4 of the act enumerates the powers of such corporation to own real estate, acquire title by condemnation, lay tracks, with the consent of a city, upon or under streets, and make necessary connections with railroads proposing to use the said union depot. Section 6 of the act provides that there shall be no discrimination against any railroad company using or desiring to use the depot, either as to terms, conditions or regulations.

The Chicago Union Station Company is an Illinois corporation organized under this act. All of its stock is owned by the Chicago, Burlington & Quincy Railroad Company, the Chicago, Milwaukee, St. Paul and Pacific Railroad Company, the Pittsburgh, Cincinnati, Chicago and St. Louis Railroad Company, and the Pennsylvania Railroad Company, and its depot and track facilities are used by those railroads and the Chicago and Alton Railroad Company.

Such use is under leasing agreements by which the railroad companies agree to pay as a gross annual rental for the use of these facilities, a sum of money sufficient to pay interest on bonds, other capital obligations of the appellant, all taxes and special assessments, and a dividend of not less than five percent annually on the outstanding stock, in the manner and in the proportion set out in those agreements. Appellant has no income except that paid by the railroads using its facilities under those agreements. It has a bonded indebtedness of $69,100,000 par value, all of which bonds are guaranteed both as to payment of principal and interest by the proprietary companies jointly and severally.

The question first presented is whether appellant's property is properly assessable as railroad property. Appellant owns 21.12 acres of right of way on which it has constructed and owns 12.53 miles of first, second, third, fourth and additional railroad tracks and seven buildings consisting of its depot, concourse and train sheds, one powerhouse, two signal towers, two signal shops and one shelter. Section 40 of the Revenue Act, as it existed at the time this assessment was made, (Ill. Rev. Stat. 1935, chap. 120, par. 45, p. 2616,) requires that every person, company or corporation owning, operating or constructing a railroad in this State, shall return sworn lists or schedules of the taxable property of such railroad as in the act provided. Section 42 of that act defines "railroad track" as including the superstructures on main, side or second tracks and turn-outs, and the station and improvements of the railroad company on such right of way, and declares that such shall be held to be real estate for the purpose of taxation and be designated "railroad track." The Tax Commission is required by that act to assess railroad property designated as "railroad track" and "rolling stock."

As we have seen, the Union Depot Act, under which appellant exists, expressly authorizes it to own real estate,

lay tracks, and to make necessary connections with railroads proposing to use its union depot. The purpose of the Union Depot Act, as stated therein, is to facilitate the public convenience and safety in the transmission of goods and passengers from one railroad to another. It is admitted that the buildings and tracks of the appellant are used for the transportation of passengers, mail and express, to and from its depot. It handles no freight. While it may be said that the tracks and depot in themselves do not constitute a railroad, since its starting point is at its depot and its termini are at the ends of the tracks owned by it, yet, when such tracks were connected with the using railroads, they became, for taxing purposes, a railroad.

In *People ex rel. Shipton* v. *Dunleith and Dubuque Bridge Co.* 322 Ill. 99, the bridge company was incorporated by a special act of the General Assembly, approved February 14, 1857, with power to build, maintain and use, for railroad purposes, a bridge over the Mississippi river, or that portion thereof within the jurisdiction of this State, at or near Dunleith, and to connect such bridge by railroad or otherwise with any railroad either in the State of Illinois or in Iowa terminating at or near that point. It was authorized also to consolidate its franchises and property with any and all bridge and railroad companies in either of those States, and to enter into agreements with such bridge or railroad companies to lease their property. A similar corporation was chartered by the State of Iowa, and a bridge was constructed across the Mississippi River from Dunleith to Dubuque, Iowa. The General Assemblies of both Illinois and Iowa approved the consolidation of the two corporations. The bridge company owned the bridge and railroad tracks and leased the use of them to the Illinois Central Railroad. The Illinois State Tax Commission assessed the property of the bridge company as "railroad track." The Board of Review of Jo Daviess county, over objection of the bridge company, also assessed the same

property on the theory that the property was not railroad track, and taxes were extended against it. The bridge company paid the tax as assessed by the State Tax Commission and on application of the county collector for judgment for taxes assessed against it by the county, the bridge company filed objections which were sustained by the county court. The county collector appealed. This Court, in affirming the judgment of the county court, held that a railroad bridge across the Mississippi river is assessable as railroad track by the State Tax Commission where the bridge and tracks are owned by consolidated corporations, the original companies of which were incorporated under the laws of Illinois and Iowa for corporate purposes, and used as the facilities were used in that case, and this notwithstanding the bridge company under the name of a bridge company had no rolling stock. It is clear from the holding in that case that the appellant's property was properly assessable by the Tax Commission as railroad property.

The next question is whether the Tax Commission was justified in valuing appellant's property by the formula used. Appellant urges that its method by which valuation was fixed is in violation of the Revenue Act of 1872; that the commission, in determining the value of appellant's property for taxing purposes, was limited to its physical real estate, and that the commission included intangible as well as tangible property. The collector, on the other hand, insists that no intangible property was assessed but that it was used as one of the factors in determining the value of the tangible property. The record shows that the Tax Commission used a formula adopted for making railroad assessments in valuing appellant's property. Appellee says that method took into account three factors, (1) the average net railroad operating income for the previous five years capitalized at 6 per cent, (2) the five-year high and low market quotations of its stocks and bonds, and (3) the de-

preciated reproduction cost, and from a straight average of these three factors, considered with the data furnished by appellant in its 1936 return, determined the full value of appellant's property.

The railroad assessor employed by the Tax Commission testified that he took the net operating income as reported by appellant, $3,615,364.60, capitalized at 6 per cent, which produced a valuation of $60,256,000; that he then determined the estimated net value of stock issued in the sum of $2,800,000, and bonds of $69,100,000 par value, from which he deducted $83,000 for nonoperating locally-assessed property, arriving at the amount of $71,598,000, which he found represented the par value of the outstanding stock plus the market value of the outstanding debt. He does not explain the discrepancy. He testified that by using that result, and the reproduction cost returned by appellant of $41,315,000, he found as an average of the three results the sum of $57,723,000. From these figures the Tax Commission placed a tentative full valuation of $51,900,000 and a tentative assessed valuation for 1936 of $19,201,058. After a hearing on appellant's objections a final full valuation of $49,059,460 was placed on appellant's property, and by using 37 per cent thereof as the uniform State average of equalization, the final assessed valuation for 1936 was fixed at $18,152,000.

It will be noted that this witness stated that the schedules returned by appellant were considered. Appellant's schedule B-6, however, cannot be construed as showing a net railroad operating income of $3,615,364.60, as this witness testified, but as used by the Tax Commission shows such an item as gross income, and after deductions are taken the schedule shows an average net income for five years of $185,000. A reference note opposite the item last mentioned states that $225,000 of net income applies to a sinking fund and $140,000 to dividends. The schedule does

not indicate that the sum of $140,000 dividends on outstanding stock was received. It clearly appears therefore that this schedule, instead of showing $185,000 net income shows, in fact, a deficit instead of a net income. The result is that capitalization of the sum treated as net income by the Tax Commission was not a proper factor in determining the fair cash value of appellant's property.

· Appellant's schedule B-2 filed with the Tax Commission listed the par value of outstanding bonds at $69,100,000, including notes and debentures outstanding, with the notation, however, that the bonds were guaranteed as to both payment of principal and interest by the proprietary companies jointly and severally, and therefore could not reflect the value of the earning ability of the appellant. It may also be observed that because of this guaranty, the par value of these guaranteed bonds does not reflect the value of the property mortgaged. Appellant listed 28,000 shares of its authorized capital stock held equally by the four railroad companies. Dividends of 5 per cent on those shares are also guaranteed by these four railroads. The result is that such guaranteed dividend was, by a bookkeeping transaction, paid by the stockholders and immediately returned to those who made the payment. Market value of bonds, notes and debentures, secured by mortgage on the physical property of the issuing corporation, are normally taken as a fair criterion that the physical property has a fair cash market value of at least the amount of the indebtedness, and the market value of such indebtedness is properly taken as one of the factors to be considered in fixing the fair cash value of the physical property. In this case, however, the bonds show a market value above par, although the books of the appellant company show operation at a loss. Since all the indebtedness of appellant is guaranteed, both as to principal and interest, the market value of such indebtedness does not reflect a proper factor in arriving at

the fair cash value of the physical property of the debtor, and it clearly shows that the factor of $71,598,000 used by the Tax Commission as representing the par value of outstanding stock plus market value of outstanding debt, less the value of nonoperating, locally assessed property in the amount of $83,000, was not a proper factor to be used in determining the full cash value of appellant's property.

Eliminating those factors, there was left for consideration by the Tax Commission the sole factor of the fair cash value of appellant's real estate with improvements thereon for assessment purposes. If, as contended by appellant, its property was not assessed on the same basis of debasement as all other property in the taxing district, such an assessment amounts to a denial of the equal protection of the law, and taking property without due process of law contrary to the provisions of the fourteenth amendment to the constitution of the United States. (*Brinkerhoff-Faris Trust & Savings Co.* v. *Hill,* 281 U. S. 673, 74 L. ed. 1107; *Hanover Fire Ins. Co.* v. *Carr,* 272 U. S. 494, 71 L. ed. 372; *Sioux City Bridge Co.* v. *Dakota County,* 266 U. S. 441, 67 L. ed. 340.) Such assessment would likewise be in violation of the provisions of section 1 of article IX of the constitution of this State requiring that taxes be levied by valuation so that every person or corporation shall pay a tax in proportion to the value of its property. Equality and uniformity of taxation are by the constitution guaranteed in accordance with the value of the property taxed. This constitutional provision does not permit the valuation of one piece of property at a certain proportion of its true value and other property in the same taxing district at a substantially less or greater proportion of its true value. Taxing officials are required to obey the edict of the constitution. All taxing laws are to be subordinated to the constitutional edict of uniformity in valuation for the purpose of taxation. *People ex rel. Wangelin* v. *Wiggins Ferry Co.* 357 Ill. 173;

*People ex rel. McDonough* v. *Illinois Central Railroad Co.*
355 Ill. 605; *People ex rel. Meade* v. *Board of Review,*
329 Ill. 388; *People ex rel. Miller* v. *Chicago, Burlington
and Quincy Railroad Co.* 300 Ill. 399.) This court has
consistently held, though not approving the plan of debase-
ment commonly used, that if such method be used, consti-
tutional requirements of uniformity must be met. *People*
v. *Wiggins Ferry Co.* 357 Ill. 173; *People* v. *Illinois Cen-
tral Railroad Co.* 355 Ill. 605. The tax commission de-
based appellant's property at 37 per cent of the fair cash
value, as it did all other railroad property in the State, and
it is immaterial here what rate of debasement was used by
the assessor of Cook county.

The record before us shows clearly by the testimony of
the Tax Commission's railroad assessor that the commis-
sion, in valuing appellant's real estate, including tracks and
improvements, used a schedule known as "Schedule B-4,"
which it required appellant to file, containing the Interstate
Commerce Commission valuations as of December 31, 1927,
plus additions and betterments and less retirements and
depreciation to date. The commission's assessor admitted
that the reproduction cost listed in schedule B-4 was not
reproduction cost of December 31, 1935; also that con-
struction of railroad facilities as well as other kinds of
construction declined from 1927 to 1935 and that the rate
of depreciation, which was shown in schedule B-4 to be
3 per cent, was less than the usual depreciation taken. It
also appears that in making the tentative valuation the
commission made no allowance for the decline in reproduc-
tion costs not reflected in that schedule. This witness also
admitted that he assisted in making the Interstate Com-
merce Commission appraisement of 1927 on appellant's
lands and improvements; that the valuation of the lands
fixed at $20,757,026 in schedule B-4 is the same valuation
determined by that appraiser's committee, and that later

the appellant's property was reappraised by that commission and a less valuation placed upon it, but such lesser valuation was not used in making this valuation for assessment purposes.

From the foregoing, it is clear that the Tax Commission, in valuing appellant's property for taxation purposes, used factors not applicable to that property and improperly used a replacement factor that did not take into account, in valuing the improvements, a proper allowance for depreciation and other applicable deductions. The method used by the Tax Commission resulted in a want of uniformity contrary to the provisions of section 1 of article IX of our constitution. It is clear from this record that the fair cash value of appellant's property on April 1, 1936, was not as returned, although it is impossible to ascertain such value so that the correct amount of tax due can be determined. Appellant admits liability for 60 per cent of the tax required and claims a right to a refund on the balance of the 85½ per cent paid and to be freed of all taxes assessed against it above 60 per cent. It has voluntarily paid the tax on the basis of a valuation of $10,891,199 and the balance of the 85½ per cent of the whole tax was paid under protest.

Under the views herein expressed and the points discussed, it becomes unnecessary to discuss further points raised. The county court erred in overruling appellant's objections to this tax. The judgment of that court is reversed and the cause is remanded with directions to sustain appellant's objections and order a return of the claimed portion of the tax paid under protest.

*Reversed and remanded, with directions.*