(No. 29081.—

THE PEOPLE *ex rel.* Victor L. Schlaeger, County Collector, Appellee, *vs.* C. B. ALLYN, Appellant.

*Opinion filed January 23, 1946—Rehearing denied March 14, 1946.*

ADELBERT BROWN, of Chicago, for appellant.

WINSTON, STRAWN & SHAW, (JAMES H. CARTWRIGHT, and PAUL H. MOORE, of counsel,) all of Chicago, for appellant on rehearing.

WILLIAM J. TUOHY, State's Attorney, JACOB SHAMBERG, and JOSEPH H. O'CONNOR, (DAVID B. MALONEY, of counsel,) all of Chicago, for appellee.

Mr. JUSTICE FULTON delivered the opinion of the court:

This matter comes to us on appeal from the judgment of the county court of Cook county overruling the objections of C. B. Allyn, hereafter referred to as the taxpayer, to the application of the *ex officio* county collector of Cook county, hereafter referred to as the collector, for judgment and order of sale on property belonging to the taxpayer for certain 1943 taxes paid under protest.

The taxpayer's property lies within the corporate limits of the village of Barrington, which municipality, while mainly located in Lake county, extends over into Cook county. Property in this village is subject to taxes for different counties, townships, and road and bridge districts, but the village of Barrington, Barrington park district and school district No. 4 are common taxing bodies. The objections herein are concerned only with the latter three tax levies. The levy is objected to as being discriminatory and constituting constructive fraud in violation of section 1 of article IX and section 2 of article II of the constitution of the State of Illinois and of the due-process and equal-protection clauses of the fourteenth amendment to the constitution of the United States.

At the hearing in the county court it was stipulated that the collector had established a *prima facie* case. The evidence produced at the hearing consisted of a stipulation of facts and documentary evidence and testimony presented by the taxpayer. No evidence was introduced by the collector. By the stipulation it was agreed that for the year

1943 the tax rate for $100 of assessed valuation for the village of Barrington was $.65, for the Barrington park district, $.29 and for school district No. 4, $1.82; that the property of the taxpayer here was assessed by the Cook county assessor for the year 1943 at its fair cash value as of April 1, 1943, and the assessed value of the property was the amount determined by the assessor of Cook county as the fair cash value as of April 1, 1943; that the Department of Revenue determined the assessed value of all property throughout Cook county and throughout Lake county for the year 1943, and determined the ratio of assessed value to full cash valuation for each of said counties; that the ratio of assessed valuation to full valuation in Lake county as determined by, the Department of Revenue was 21 per cent and that the ratio of assessed valuation to full valuation in Cook county for the year 1943 was 75 per cent; that the county clerk of Cook county and the county clerk of Lake county caused to be filed in the Department of Revenue an abstract of the assessed valuation of all the taxable property in their respective counties for the year 1943. The only oral testimony produced at the hearing was by C. B. Allyn, the objecting taxpayer. It appears that Allyn, at the time of the hearing, was, and had been since 1943, head of the tax department of a large Chicago merchandising corporation. Prior to 1943, he had spent nineteen years with the Jewel Tea Company, the last nine years of which he was engaged as chief accountant and assistant comptroller in charge of accounting and taxes at the headquarters of the Jewel Tea Company in Barrington, Illinois; that, as a part of his duties in connection with the analysis of taxes for the Jewel Tea Company, he was familiar with the valuation methods used in Cuba township, Lake county, wherein the greater portion of the municipality of Barrington lies; that he was familiar with the report of the Department of Revenue disclosing the ratios of assessed valuation to full

cash valuation for the year 1943, and that the figure of 21 per cent was a fair statement of the average as it existed in Cuba township in 1943; that he had made a study of assessment values from the records. He also testified that except for minor variations in the ratio of assessed value to full cash value, the ratio in Cuba township had been the same since 1930. Allyn further testified that the figure of 75 per cent of full value by the Department of Revenue as to Cook county was approximately correct as to the property in Barrington township, Cook county, and that this latter ratio has existed only starting in 1943. Prior thereto, an equalizing figure of 37 per cent had been applied to the previous 75 per cent of full value, which equalizing figure brought the assessed value down to 28 per cent.

Much of the testimony of Allyn was objected to by counsel for the collector on the ground of lack of qualification in Allyn to testify as to the assessment ratio used and that the testimony of Allyn was opinion evidence and conclusions. Over objection there was admitted in evidence taxpayer's exhibit 5, which was a computation of taxes as extended for the three taxing districts in question here on a sample piece of property worth $10,000 located in Cook county and in Lake county. For the three districts, it appears that the $10,000 property in Cook county had been taxed at $207 and for Lake county, $57.96. The taxpayer also introduced as exhibit 6, over objection, his computation showing that the tax extended against his own property was $141.45 and that the tax extended against similar property in Lake county was $39.61.

Allyn further testified that in connection with exhibit 6, mentioned above, the property used as a comparison was a house built by a business associate of Allyn's the same year that Allyn built his house, that the same contractor and subcontractor were used and that the cost of the business associate's house exceeded Allyn's by 10 per cent. This same property, however, for the same mu-

nicipal services paid a total tax of $39.61, whereas, Allyn's property was subjected to a tax of $141.45. It further appears that a complaint was filed on the property here involved before the Board of Appeals based upon the grounds of lack of uniformity and the complainant asked for a hearing. No hearing was granted and on December 10, 1944, an order was entered by the Board of Appeals as follows: "No reduction."

The taxpayer assigns six errors as grounds for reversal in this case. These errors can be summed up by the statement that it is the taxpayer's contention that the tax levy, as related to the three above taxing units, only, is invalid for the reason that they all violate the cardinal principle of uniformity in taxation of the same class of property in the same taxing unit.

While considerable emphasis is placed by counsel for the collector in his reply brief upon the fact that the proof and evidence in this case were not sufficient to overcome the stipulated *prima facie* case made by the collector, we are of the opinion from a reading of the whole record, including the stipulations entered into, that for the year 1943 the average assessed value of real property in the county of Cook was 75 per cent of the full, fair, cash, market value of said property, and that for the year 1943 the average assessed valuation of real property in Lake county was 21 per cent of the full, fair, cash, market value of said property. We are further of the opinion that on the average the above percentage figures applied to Barrington township in Cook county and to Cuba township in Lake county. We are called upon, therefore, to decide this question,—Does a subsidiary corporate tax levy where the boundaries of the taxing unit extend into two or more counties violate the constitutional mandate of uniformity in taxation where the assessed valuation in one county is disproportionate to the assessed valuation in the other county?

The three common taxing bodies, Barrington village, Barrington park district, and school district No. 4, are each separate taxing bodies with statutory authority to levy taxes for their separate corporate purposes. These corporate purposes are separate and distinct from those for which counties are authorized to levy taxes and bear no relationship to corporate purposes of counties. The authorities of the three taxing bodies, however, have no power to assess and fix values of properties in their respective districts.

In support of his contention that a lack of uniformity exists in the above-mentioned taxing districts as required by section 1 of article IX of the constitution of 1870, the appellant has cited and quoted from a large number of Illinois cases where inequalities in taxation have been held improper and invalid. These cases have been so many times cited and analyzed that a detailed discussion of them is not necessary to this opinion. They all hold that courts will grant relief against inequality in taxation resulting from favoritism, fraud or intentional misconduct on the part of assessing bodies or officers. Most of them are cases where a given equalization factor has been applied to one class of property, or to property of one owner, and a different factor to another. Such methods are condemned in all of the following and many other cases: *People's Gas Light and Coke Co.* v. *Stuckart,* 286 Ill. 164; *People ex rel. McDonough* v. *Illinois Central Railroad Co.* 355 Ill. 605; *People ex rel. Wangelin* v. *Wiggins Ferry Co.* 357 Ill. 173; *People ex rel. McDonough* v. *Grand Trunk Western Railroad Co.* 357 Ill. 493; *People ex rel. Ross* v. *Chicago, Burlington and Quincy Railroad Co.* 381 Ill. 374; *Greene* v. *Louisville & Interurban Railroad Co.* 244 U. S. 499.

They further hold that the great central and dominant idea of the constitution is uniformity of taxation. But it also can be said of those cases that the question arose

over the misconduct of the assessor or the assessing bodies where the properties were State-wide or located in the same county and the factor adopted by the assessor was not applied equally to all property within the State or county. The rule of uniformity applies to property of like kind and character and similarly situated. (*People* v. *Southwestern Bell Telephone Co.* 377 Ill. 303.) Section 1 of article IX of the constitution provides: "The General Assembly shall provide such revenue as may be needful by levying a tax, by valuation, so that every person and corporation shall pay a tax in proportion to the value of his, her or its property—such value to be ascertained by some person or persons, to be elected or appointed in such manner as the General Assembly shall direct, and not otherwise."

None of the cases relied upon by appellant present a similar situation to that in the instant case. Here the values were fixed by the assessor or the assessing officers of the counties of Cook and Lake, respectively. The assessor is the officer who has been provided by the legislature for fixing the valuation of property for the purpose of taxation. In this record there is no suggestion of fraud made against the assessing bodies, nor any claim that the assessment was made on a wrong basis or an excessively high valuation placed thereon.

The appellant merely says he is paying a greater burden of the taxation for the three subsidiary corporations than like property similarly situated over in Lake county. In *First National Bank* v. *Holmes,* 246 Ill. 362, at page 367, we said: "While the constitution declares the rule of equality, it also provides that the value of property shall be ascertained by some person or persons to be elected or appointed in such manner as the General Assembly shall direct, and not otherwise. No system has ever been devised which has produced perfect equality and uniformity of taxation as between persons or corporations or different

classes of property, and such a result cannot reasonably be expected. (*People* v. *Worthington,* 21 Ill. 170; *Traveler's Ins. Co.* v. *Connecticut,* 185 U. S. 364.) Under the statute the valuation is to be made by the assessor or board of review, and the judgments of such officers, when honestly exercised, will naturally differ. If their judgment is so exercised the constitution forbids a valuation by any other authority."

There is nothing in the briefs to indicate or suggest how uniformity might be maintained as between properties located in different counties but included within one park or school district. If he be correct in his position, it would necessitate all the property throughout the State being valued alike before absolute uniformity in overlapping districts, located partially in two or more counties, could be accomplished. In such situations, as long as the assessment and levy of taxes is based upon the judgment of the assessing officers in each separate county, absolute uniformity cannot be achieved. This matter is one exclusively for the legislature, and the relief, if any, in the several counties must come from the legislature and not from the courts. *People ex rel Hempen* v. *Baltimore and Ohio Railroad Co.* 379 Ill. 543, at page 546.

In the case of *People ex rel. Toman* v. *Olympia Fields Country Club,* 374 Ill. 101, it was stated by this court that, concerning a taxpayer's claim of constructive fraud, the rule is that fraud in the valuation of property for purposes of taxation must be proved by clear and sufficient evidence. The presumption is that the tax is just and that the tax-levying officers have performed their duties. The objector must establish by clear and convincing evidence that fraud has been committed.

In the present case there is nothing to show that the assessment was not made in the exercise of honest judgment, or that the assessor committed any act of discrim-

ination against the appellant. There is no appearance of fraud or inequality between properties in either Lake or Cook counties.

"It is the law that the assessed value of property for taxation purposes cannot be impeached merely because of the difference of opinion as to values between the assessing bodies and the court." (*People* v. *Wiggins Ferry Co.* 357 Ill. 173.) There is no claim, in the present case, that that the valuation placed upon the property of the taxpayer. was willful or arbitrary or at a valuation grossly in excess of its market value.

We do not feel that the taxpayer here has sustained the burden of proof imposed upon him by establishing by such clear and convincing evidence either actual or constructive fraud on the part of the taxing authorities such as would warrant a reversal of the judgment of the county court. The judgment of the county court of Cook county is, therefore, affirmed.

*Judgment affirmed.*