Du PAGE BANK & TRUST COMPANY, as Trustee, Plaintiff-Appellee, v. THE PROPERTY TAX APPEAL BOARD *et al.*, Defendants-Appellants.

Second District   Nos. 2—85—0509, 2—85—0542 cons.

Opinion filed December 31, 1986.—Rehearing denied February 9, 1987.

Neil F. Hartigan, Attorney General, of Springfield (Roma Jones Stewart, Solicitor General, and Candida Miranda, Assistant Attorney General, of Chicago, of counsel), for appellants.

Sandra Kerrick and William M. Franz, both of Franz, Naughton & Leahy, of Crystal Lake, for appellee.

PRESIDING JUSTICE NASH delivered the opinion of the court:

Defendant, the Property Tax Appeal Board (PTAB) appeals from a judgment of the circuit court which, on administrative review, re-

versed a decision of the PTAB upholding the 1981 assessment of property held by the plaintiff, the Du Page Bank & Trust Company, as trustee. The PTAB contends the trial court erred in finding: (1) the assessment violated the constitutional requirement of uniformity of taxation and (2) that the subject property was entitled to a farmland classification.

The subject property is a 107-acre parcel consisting of two tracts, 36.75 acres and 71 acres, located in a commercial/industrial area in the city of Crystal Lake. The south one-quarter of the property is improved with buildings once used by the Illinois Institute of Technology and McHenry County College, but abandoned since 1973. From July 1, 1980, to July 1, 1982, the 36.75-acre tract was zoned PUD Commercial and the 71-acre tract PUD for other uses.

The property was assessed at $540,520 for 1981, and plaintiff appealed to the McHenry County board of review for a reduction of the assessment and for a farmland classification as provided in section 20e of the Revenue Act of 1939 (Ill. Rev. Stat. 1981, ch. 120, par. 501e). The board of review denied the requested relief, but adjusted the assessment to $476,060 to correct an error in the amount of acreage.

Plaintiff appealed the land assessment ($456,060 attributable to land and $20,000 attributable to improvements) to the PTAB and a hearing *de novo* was held on December 3, 1982. Plaintiff argued that the assessed valuation of the subject property was 26.5 times that of similar properties and offered three parcels as comparables: a 70.44-acre farm assessed at $21,400 as farmland; a 134-acre golf course assessed at $52,280 as open space; and a 66.28-acre farm assessed at $19,890 as farmland. Plaintiff also submitted a photograph of the subject property taken in November 1982, showing a corn crop on it.

The Algonquin township assessor testified that the fair market value of the subject property on January 1, 1981, was $2.7 million. The assessor based his valuation upon sales of comparably zoned property with road frontage and upon his estimation that it would take approximately 10 years to improve the property to its optimum market value. The assessor also testified that he was familiar with the subject property and had not observed any farming of it for 10 years prior to 1982, at which time the property had been planted with corn.

The PTAB found that the assessment was proper and plaintiff sought administrative review of that decision in the circuit court of McHenry County. The trial court found that the United States Constitution requires uniformity of taxation irrespective of the classification of property and that the property had not been uniformly assessed as

compared with the other properties submitted. The circuit court also determined that the PTAB's finding that no farming had taken place on the property until 1982 was contrary to the manifest weight of the evidence and that it was entitled to a farmland classification. The court reversed the decision of the PTAB and reduced the assessment of plaintiff's property from $4,262 to $304 per acre. The PTAB appeals.

We consider first the PTAB's contention that the circuit court erred in reversing the PTAB's finding that the property was not entitled to a farmland assessment.

■■ ■ A determination by an administrative agency will not be disturbed upon review unless contrary to the manifest weight of the evidence. (*Citizens Utilities Co. v. Department of Revenue* (1986), 111 Ill. 2d 32, 47, 488 N.E.2d 984; *Cherry Bowl, Inc. v. Property Tax Appeal Board* (1981), 100 Ill. App. 3d 326, 328, 426 N.E.2d 618; *Robinson v. Property Tax Appeal Board* (1979), 72 Ill. App. 3d 155, 156, 390 N.E.2d 942.) In order to qualify for assessment as farmland, real property must have been used as a farm for the last two years preceding the tax year in question. (Ill. Rev. Stat. 1981, ch. 120, par. 501e.) Section 1(25) of the Revenue Act of 1939 defines "farm" with reference to certain enumerated farming activities, such as the growing of crops and the raising of livestock. (Ill. Rev. Stat. 1981, ch. 120, par. 482(25).) In determining whether property is entitled to a farmland classification for assessment purposes, the focus is on the present use of the property. *Santa Fe Land Improvement Co. v. Illinois Property Tax Appeal Board* (1983), 113 Ill. App. 3d 872, 875, 448 N.E.2d 3, *appeal denied* (1983), 96 Ill. 2d 550.

■ At the hearing before the PTAB, the township assessor testified that he was familiar with the subject property and had not observed any farming activity on it for the 10 years prior to 1982. The only evidence of farming submitted by the plaintiff was a photograph taken in 1982 showing a corn crop on the property. No evidence was presented to establish that the property had been farmed in 1981, the tax year in question. Counsel for the plaintiff stated to the PTAB that farming had been "intermittent" and that for some years, including 1981, the property had been allowed to lie fallow. We conclude the trial court erred in finding that the PTAB's denial of a farmland classification was contrary to the manifest weight of the evidence.

■ Plaintiff also argues that fallow lands should be classified as farmland, and represents that it is a practice in McHenry County to assess fallow lands as farmland. However, the Revenue Act does not contain an exception for fallow lands and, in any event, no evidence

was offered to support the conclusion that the subject property was farmed prior to 1981 and then allowed to lie fallow as a farming practice. Moreover, plaintiff's representations as to local assessment practices are *de hors* the record, and thus do not constitute support for his argument. We conclude that the circuit court erred in applying a farmland classification to the property and in reducing the assessed valuation on that basis.

■ The PTAB next contends that the trial court erred in finding that the subject property was not assessed in accordance with the constitutional principle of uniformity of taxation, which requires that like property be equally taxed in proportion to value. (*Apex Motor Fuel Co. v. Barrett* (1960), 20 Ill. 2d 395, 401, 169 N.E.2d 769; *People ex rel. Wangelin v. Wiggins Ferry Co.* (1934), 357 Ill. 173, 180, 191 N.E. 296.) Plaintiff argues that classification is irrelevant to the achievement of uniformity of taxation and states that the assessed valuation of the subject property is 26.5 times that of similar parcels which are classified as farmland or open space.

The 1970 Illinois Constitution contains a uniformity clause which provides:

> "Except as otherwise provided in this Section, taxes upon real property shall be levied uniformly by valuation ascertained as the General Assembly shall provide by law." (Ill. Const. 1970, art. IX, sec. 4(a)).

The 1870 Illinois Constitution contained a similar provision. (Ill. Const. 1870, art. IX, sec. 1.) Our supreme court has determined that the clause requires only that taxation be uniform as to the class upon which it operates. (*People ex rel. Bosworth v. Lowen* (1984), 102 Ill. 2d 242, 248, 464 N.E.2d 1053; *Hoffmann v. Clark* (1977), 69 Ill. 2d 402, 423, 372 N.E.2d 74.) Since the subject property bore a different tax classification than the parcels which plaintiff offered as comparable, it has not been shown that the assessment offended the Illinois Constitution.

■ Plaintiff also contends that the disparity between the assessed valuation of the subject property and the other "comparables" offends the equal protection clause of the United States Constitution. (U.S. Const., amend. XIV, sec. 1.) The threshold inquiry in equal protection analysis is whether similarly situated persons are treated dissimilarly. (*Eisenstadt v. Baird* (1972), 405 U.S. 438, 446-47, 31 L. Ed. 2d 349, 358, 92 S. Ct. 1029, 1035; *Jenkins v. Wu* (1984), 102 Ill. 2d 468, 477, 468 N.E.2d 1162; *People v. Sampson* (1985), 130 Ill. App. 3d 438, 445, 473 N.E.2d 1002.) The United States Supreme Court has held that the States may classify property for taxation purposes, provided

equality is accorded to all members of the same class. (*Lehnhausen v. Lake Shore Auto Parts Co.* (1973), 410 U.S. 356, 359, 35 L. Ed. 2d 351, 354-55, 93 S. Ct. 1001, 1003; *Nashville, Chattanooga & St. Louis Ry. v. Browning* (1940), 310 U.S. 362, 368, 84 L. Ed. 1254, 1257, 60 S. Ct. 968, 971.) The Illinois Supreme Court has also noted that "[i]t has long been settled that the power of the legislature to make classifications, particularly in the field of taxation, is very broad, and that the fourteenth amendment imposes no 'iron rule' of equal taxation." *Department of Revenue v. Warren Petroleum Corp.* (1954), 2 Ill. 2d 483, 489-90, 119 N.E.2d 215.

■ Plaintiff does not contest the constitutionality of the statutes establishing farmland and open-space classifications and, as we have determined, the subject property was not entitled to a farmland classification. Since plaintiff's property and the parcels offered as comparables bore different tax classifications, they may properly be assessed and taxed differently without offending the equal protection clause.

■ In support of his argument that equal protection requires uniformity of taxation irrespective of classification, plaintiff relies on the United States Supreme Court decisions in *Concordia Fire Insurance Co. v. Illinois* (1933), 292 U.S. 535, 78 L. Ed. 1411, 54 S. Ct. 830, and *Hanover Fire Insurance Co. v. Carr* (1926), 272 U.S. 494, 71 L. Ed. 372, 47 S. Ct. 179. Plaintiff argues that these decisions mandate uniformity of taxation for all kinds of property, however classified. We do not agree.

In the *Concordia* case, the net receipts of foreign insurance companies were assessed at a different rate than other personal property. The Supreme Court held that this practice violated the equal protection clause because there was no reasonable basis to discriminate against this species of personal property. (*Concordia Fire Insurance Co. v. Illinois* (1933), 292 U.S. 535, 78 L. Ed. 1411, 54 S. Ct. 830; see *National-Ben Franklin Fire Insurance Co. v. Brenza* (1952), 411 Ill. 337, 342-43, 104 N.E.2d 218.) In the *Hanover* case, the court also found that dissimilar tax treatment of property *of the same class* offended the equal protection clause. (*Hanover Fire Insurance Co. v. Carr* (1926), 272 U.S. 494, 516, 71 L. Ed. 372, 382-83, 47 S. Ct. 179, 185.) Contrary to plaintiff's assertion, in neither case did the United States Supreme Court state that the equal protection clause mandates uniformity of taxation irrespective of classification. The Illinois Supreme Court has said that the fourteenth amendment requires no more than uniformity among members of the same class (*People ex rel. Miller v. Doe* (1961), 22 Ill. 2d 211, 219, 174 N.E.2d 830), and

that rule will be applied here. We conclude that the assessment of the subject property did not offend the equal protection clause.

■■ Plaintiff next contends that the assessment was improper under the doctrine of constructive fraud. Fraud must be established by clear and convincing evidence. (*In re Application of Rosewell* (1985), 106 Ill. 2d 311, 318, 478 N.E.2d 343; *Clarendon Associates v. Korzen* (1973), 56 Ill. 2d 101, 104, 306 N.E.2d 299; *People ex rel. Rosewell v. Dee El Garage, Inc.* (1977), 51 Ill. App. 3d 382, 385, 366 N.E.2d 585.) Deliberate misconduct by the assessor need not be shown. (*People ex rel. Skidmore v. Anderson* (1974), 56 Ill. 2d 334, 339, 307 N.E.2d 391.) In *People v. International Business Machines Corp.* (1982), 89 Ill. 2d 287, 293, 432 N.E.2d 867, 870-71, constructive fraud in assessments was described as follows:

"Some guidelines have been established for the proof necessary to establish constructive fraud. Assessments that are disproportionately higher than those for similar property or assessment that are based on the assessor's own private opinion showing a lack of knowledge or a lack of honest judgment are indicative of constructive fraud. (*Clarendon Associates v. Korzen* (1973), 56 Ill. 2d 101, 104-05[, 306 N.E.2d 299]; *People ex rel. Nordlund v. Lans* (1964), 32 Ill. 2d 477, 479[, 202 N.E.2d 543]; *Aldrich v. Harding* (1930), 340 Ill. 354, 358[, 172 N.E. 772]; *People ex rel. Carr v. Stewart* (1924), 315 Ill. 25, 30[, 145 N.E. 600].) Similarly, overvaluation may be so excessive, under some circumstances, as to justify the conclusion that it was not honestly made and, therefore, is constructively fraudulent. (*Clarendon Associates v. Korzen* (1973), 56 Ill. 2d 101, 104-05[, 306 N.E.2d 299]; *People ex rel. Paschen v. Hendrickson Pontiac, Inc.* (1957), 12 Ill. 2d 477, 480[, 147 N.E.2d 29]; *People ex rel. Callahan v. Gulf, Mobile & Ohio R.R. Co.* (1956), 8 Ill. 2d 66, 69-70[, 132 N.E.2d 544].)"

Plaintiff states that there here exists a 2,650% disparity between the assessment levels of the subject property and similar property and, in support of his argument, has compared the 1981 assessed valuations and 1981 taxes for the respective parcels to find the disparity.

■■ In analyzing such a case, our courts have first required that the property selected for comparison purposes be similar in kind and character and be similarly situated. (*People ex rel. Johnson v. Robison* (1950), 406 Ill. 280, 285, 94 N.E.2d 151; *People ex rel. Toman v. Olympia Fields Country Club* (1940), 374 Ill. 101, 103, 28 N.E.2d 109; *People ex rel. Wangelin v. Wiggins Ferry Co.* (1934), 357 Ill. 173, 181, 191 N.E. 296.) The "comparables" relied upon by plaintiff did

not meet this test because they bore different tax classifications than the subject property. Two of the parcels were assessed as farmland and one as open space, in accordance with sections 20e and 20g—1 of the Revenue Act of 1939, respectively (Ill. Rev. Stat. 1981, ch. 120, pars. 501e, 501g—1). These sections of the statute designate that such lands may be valued on the basis of their use as farmland and open space rather than by fair cash value, which is the basis upon which real property is normally assessed under section 20 (Ill. Rev. Stat. 1981, ch. 120, par. 501), and was the basis upon which the subject property was assessed. Also, farmland is assessed in part on the basis of its productivity. (Ill. Rev. Stat. 1981, ch. 120, par. 501e.) The fact that farmland and open space are assessed on a different basis than other real property reflects a recognition by the General Assembly that such property is distinct from other real property and is entitled to special treatment. (See *Hoffmann v. Clark* (1977), 69 Ill. 2d 402, 425-27, 372 N.E.2d 74.) It follows that specially classified property is not "comparable" with other real property because the manner in which its value is determined for tax purposes is different. The respective assessment levels, which are proportionate to fair market value, cannot be compared. We conclude plaintiff has not established fraud by comparing the assessed valuation of its property with that of property classified as farmland or open space.

　　Plaintiff also argues that the valuation of his property was so excessive that fraud must be inferred. Our supreme court has stated that the taxpayer alleging excessive valuation must show that the property has been assessed at a valuation grossly in excess of its market value. (*People v. Wilson* (1937), 367 Ill. 494, 498, 12 N.E.2d 5; *People ex rel. Wangelin v. Wiggins Ferry Co.* (1934), 357 Ill. 173, 179, 191 N.E.2d 296.) The only evidence offered in the present case is that the fair market value of the subject property on January 1, 1981, was $2.7 million dollars and its assessed valuation was $476,060. Thus, the subject property was assessed at approximately 17%, which the record shows was the county-wide assessment median. The record fails to support plaintiff's assertion that the valuation of its property was fraudulently excessive.

　　Last, plaintiff contends that the assessment of its property was improper because the township assessor speculated as to its value if it were improved in accordance with its PUD designation. A valuation is speculative and arbitrary if based upon the happening of an uncertain event rather than upon what the property would fairly and reasonably bring at a present fair sale. (*People ex rel. Rhodes v. Turk* (1945), 391 Ill. 424, 428, 63 N.E.2d 513; *People ex rel. Wangelin v.*

*Wiggins Ferry Co.* (1934), 357 Ill. 173, 181, 191 N.E. 296.) In *Wiggins,* waterfront property was improperly valued as a possible industrial site even though there had been no such development in the area and no offers to buy the property.

In the present case, the record shows that when the subject property was assessed as of January 1, 1981, it bore a PUD designation, in part PUD Commercial. The township assessor testified that he based his valuation on sales of comparably zoned property also having road frontage. Plaintiff did not offer any contrary evidence of fair market value. We conclude the assessor's valuation was not speculative, as it was based upon valid factors existing at the time of the assessment.

Accordingly, as the decision of the PTAB was not against the manifest weight of the evidence, the judgment of the circuit court will be reversed.

Reversed.

REINHARD and WOODWARD, JJ., concur.