THE FIRST NATIONAL BANK OF URBANA, Appellee, *vs.* CHARLES B. HOLMES *et al.* Appellants.

*Opinion filed October 28, 1910.*

1. TAXES—*jurisdiction of equity to enjoin collection of a tax.* The whole matter of valuing property for taxation is committed to the assessor and board of review under the controlling principle that the property shall be so valued that every person and corporation shall pay a tax in proportion to his or its property, and a court of equity has no jurisdiction to enjoin the collection of a tax unless it is unauthorized by law or is levied on exempt property or the property is fraudulently valued too high.

2. SAME—*mere over-valuation or under-valuation is not evidence of fraud.* Mere under-valuation or over-valuation, unless glaring and gross, is not evidence of a wrongful or fraudulent intent, but the valuation may be so unreasonable as to show that the officer must have known it was wrong and that he could not have been honest in fixing it, and in such case the valuation is a fraud.

3. SAME—*constitution requires valuation to be made by proper officers.* If the judgment of the assessor or board of review as to the value of property is honestly exercised, section 1 of article 9 of the constitution forbids a valuation by any other authority, but the tax-payer is entitled to the honest judgment of the assessing officers, and a tax founded on an assessment which, from corrupt and malicious motives, is made excessive or is rendered unequal or unfair by fraudulent practices of the officers may be enjoined.

4. SAME—*when both the constitution and statute are violated.* Every person and corporation is entitled to the protection of the constitutional and statutory provisions which preclude discrimination in favor of or against any class of property, person or corporation; and to require one person or corporation to pay a greater proportion of the taxes levied, according to the value of his or its property, than another, violates both constitution and statute.

5. SAME—*under the statute property should be valued at its fair cash value.*   Under the Revenue law all property should be valued by the assessor or board of review at its fair cash value and a fixed proportion thereof taken for the assessed value, and it is a violation of duty for an assessor to make a practice of valuing real estate at forty-three per cent of its fair cash value, and moneys, stocks and securities at seventy-five per cent of the fair cash value.

6. SAME—*moneys and securities should be valued the same as other property.*   It is not within the power of the legislature to provide that different classes of property shall be valued differently, and if moneys, mortgages, bonds or securities are valued at a different proportion of their full value or on a different basis from other property the constitution and statute are both violated.

7. SAME—*equity cannot intervene on ground that property of others is valued too low.*   A court of equity cannot intervene in behalf of a tax-payer upon the ground that the property of others has been valued too low.

8. SAME—*when tax-payer has no equitable right to have valuation by board of review reduced.*   Where the assessor knowingly and intentionally discriminates between the real estate of the township and personal property by valuing the former at forty-three per cent of its fair cash value and the latter at seventy-five per cent, and the board of review raises the valuation of the shares of stock of a certain bank to a figure nearer but not equal to their full value, the bank has no equitable right to have the valuation of the board reduced to the basis of the real estate valuation, as such course would work injustice to other tax-payers.

APPEAL from the Circuit Court of Champaign county; the Hon. SOLON PHILBRICK, Judge, presiding.

F. A. COGGESHALL, State's Attorney, C. D. THOMAS, A. D. MULLIKEN, W. G. SPURGIN, WILLIAM B. WEBBER, and O. L. BROWDER, for appellants.

C. W. RICHARDS, for appellee.

Mr. JUSTICE CARTWRIGHT delivered the opinion of the court:

The First National Bank of Urbana, the appellee, has a capital stock of $50,000, divided into five hundred shares of the par value of $100 each.   In the year 1908 the town-

ship assessor valued the shares of stock at the aggregate sum of $84,000 and the assessed value amounted to $16,-800. The board of review raised the valuation to $145,000 and the assessed value to $29,000. The total taxes assessed on the shares to be paid by the bank for its stockholders was $2545.21. The bank paid $1473.36, which would have been the amount of taxes on the valuation of the assessor, and filed its bill in the circuit court of Champaign county against Charles B. Holmes, collector of the township, and John A. Scott, county treasurer of the county, the appellants, to enjoin the collection of the balance of the taxes. A temporary injunction was ordered and issued, and the defendants having answered the bill, the cause was referred to the master in chancery to take the evidence and report his conclusions. The master took the evidence and filed his report, with his conclusions that the injunction should be dissolved and the bill dismissed for want of equity. The cause was heard on exceptions to the report, and the complainant's exceptions were sustained and a decree was entered making the temporary injunction perpetual and requiring the defendants to pay the costs. The case is here by the appeal of the defendants from that decree.

The evidence consisted of a stipulation of facts and the testimony of the assessor and the president of the bank, and the following facts were proved: On April 1, 1908, the fair cash market value of each share of stock as fixed by the stipulation was $390.47 and the value of all the shares was $195,239.52. The assessor fixed the full fair cash value of all the real estate in the township, consisting of lands, lots and improvements, at forty-three per cent of the real fair cash value. He valued personal property, moneys, bonds, mortgages and securities at seventy-five per cent of their fair cash value. When the tax-payer listed his personal property, moneys, bonds, notes, mortgages and securities, if the assessor considered the statement full and fair he discounted the values set down twenty-five per cent.

If he was doubtful about the value given by the tax-payer or the fullness of the statement he made no discount but valued the property at the amount given by the tax-payer. There were four banks in Urbana,—the bank of the complainant and three private banks. The assessor valued the property of the three private banks at the amounts of the sworn statements furnished him by the banks, fixing the values at the same figures shown on the schedules. He considered the shares of the complainant's bank worth $200 each and intended to make a deduction of $25 on each share, although the aggregate assessment would make the amount $168 per share. According to the assessor's plan the value of real estate which he was required to fix at the fair cash value was, in fact, forty-three per cent of such value, while personal property, bonds, mortgages, moneys and securities, which he was required to value on the same basis, were, in fact, valued at seventy-five per cent of the fair cash value, and the property of the private banks was assessed at the value sworn to by the bankers and the shares of the complainant at $168 on an estimated value of $200 per share. The board of review notified the stockholders of the complainant, and the president and assessor attended before the board. The assessor there testified that he had valued the shares of stock at the same ratio of the actual value as other property in the township, but the board raised the valuation to $145,000 in the aggregate or $290 for each share. The total value of all personal property in the township was $1,187,315, which the board of review raised and fixed the total at $1,520,565. The value of all lands, other than lots and improvements thereon, was $2,165,295, and the total value of all the lots and improvements was $4,564,315, which the board reduced somewhat but not materially.

The evidence shows a flagrant disregard of duty by the assessor, resulting in an unequal distribution of the burdens of taxation as between different kinds of property and

different tax-payers. He valued real estate at forty-three
per cent of its actual value, and personal property, includ-
ing moneys and credits, at seventy-five per cent of such
value. In the case of the complainant the actual result was
a valuation on the same basis as the real estate, or about
forty-three per cent. But the assessor had no intention of
producing that result. He estimated the value of each share
of stock at $200, when, in fact, the value was $390.47, and
his purpose was to fix the value of the shares on practically
the same basis as moneys and credits and other personal
property. The valuation as fixed by him was far below his
valuation of other property of the same class, and taking
into account the raise in valuation of personal property by
the board of review, the valuation finally fixed was prac-
tically the same as all property in the township except real
estate. The question presented to the circuit court by the
bill was whether the valuation by the board of review was
a wrong to the complainant for which a court of equity
ought to afford a remedy.

Section 1 of article 9 of the constitution provides:
"The General Assembly shall provide such revenue as may
be needful by levying a tax, by valuation, so that every
person and corporation shall pay a tax in proportion to the
value of his, her or its property—such value to be ascer-
tained by some person or persons, to be elected or appointed
in such manner as the General Assembly shall direct, and
not otherwise." The Revenue law enacted in pursuance of
that provision provides that the valuation of property for
taxation shall be by assessors, subject to revision by the
boards of review, and that property shall be valued by the
assessor or board at its fair cash value and a fixed propor-
tion thereof shall be taken as the assessed value. Every
person and corporation is entitled to the protection of the
constitutional provision, which precludes discrimination in
favor of or against any class of property, person or corpo-
ration, and the statute is designed to effect that object. To

require one person or corporation to pay a greater propor-
tion of the taxes levied, according to the value of his or
its property, than another, is a violation of both constitu-
tion and statute.   While the constitution declares the rule
of equality, it also provides that the value of property shall
be ascertained by some person or persons to be elected or
appointed in such manner as the General Assembly shall di-
rect, and not otherwise.   No system has ever been devised
which has produced perfect equality and uniformity of tax-
ation as between persons or corporations or different classes
of property, and such a result cannot reasonably be ex-
pected.   (*People* v. *Worthington,* 21 Ill. 170; *Traveler's
Ins. Co.* v. *Connecticut,* 185 U. S. 364.)   Under the statute
the valuation is to be made by the assessor or board of
review, and the judgments of such officers, when honestly
exercised, will naturally differ.   If their judgment is so ex-
ercised the constitution forbids a valuation by any other
authority.   The tax-payer is entitled to the honest judg-
ment of the person or persons elected or appointed in
the manner directed by the General Assembly, and a tax
founded on an assessment which from corrupt and mali-
cious motives is made excessive or is rendered unequal or
unfair by fraudulent practices of the officers may be en-
joined.   (Cooley on Taxation, 547.)   If property is arbi-
trarily assessed fraudulently at too high a valuation, a
court of equity will interfere to protect the tax-payer in
his constitutional right.   That was the case in *Bureau
County* v. *Chicago, Burlington and Quincy Railroad Co.*
44 Ill. 229, and *Chicago and Northwestern Railway Co.* v.
*Boone County,* id. 240, where the property of the corpora-
tions was assessed so far above the property of individuals
as to justify an inference of an intent to require them to
pay more taxes in proportion to the value of their property
than private owners.   As we know by common experience
that the judgments of reasonable men will differ as to the
value of property, mere under-valuation or over-valuation,

unless glaring and gross, is not evidence of a wrongful or fraudulent intent, but the valuation may be so unreasonable as to show that the officer must have known that it was wrong and that he could not have been honest in fixing it. Such a valuation is a fraud. (*Pacific Hotel Co.* v. *Lieb*, 83 Ill. 602; *State Board of Equalization* v. *People*, 191 id. 528.) The whole matter of valuation is committed to the assessor and board of review under the controlling principle that the property shall be so valued that every person and corporation shall pay a tax in proportion to his or its property, and a court of equity has no jurisdiction to enjoin the collection of a tax unless it is unauthorized by law or is levied on exempt property or the property is fraudulently valued too high. (*Burton Stock Car Co.* v. *Traeger*, 187 Ill. 9.) The officer who made the assessment in this case was bound to make it according to the law but did not do so, and knowingly and intentionally discriminated between different classes of property by valuing one class at forty-three per cent and another at seventy-five per cent of the real value, and the question to be decided is what a court of equity could or ought to do to remedy the inequality and injustice of such valuation. The claim of counsel for the appellee is that equity required a reduction of the valuation fixed by the board of review to the valuation of real estate in the township. The court adopted that view and made the reduction, the effect of which was to permit the complainant to pay less taxes, in proportion to the value of the shares of stock, than all other tax-payers in the township owning the same kind of property. This was a wrong to such other tax-payers, and the injustice resulting to the whole body of tax-payers owning personal property, moneys, bonds, stocks, mortgages and securities by under-valuing real estate could not be remedied in that way. The illegality was in not valuing all the property of the township at its fair cash value, and, as between the tax-payers in the township, in valuing the real

estate at a lower rate proportionately than personal property. It is not within the power of the legislature to provide that different classes of property shall be valued differently, and if moneys, mortgages, bonds or securities are valued at a different proportion of their full value or on a different basis from other property, the constitution and the law are both violated. The complainant would have had just cause to object that lands and lots in the township of Urbana were illegally valued far below their actual value so as to work an injustice to owners of other property, but the shares of stock of complainant were subject to taxation and the assessment was made in conformity to the mode prescribed by the statute and the valuation of the shares by the board of review was considerably below the actual value. A court of equity cannot intervene in behalf of a tax-payer on the ground that the property of others has been valued too low. (*People* v. *Lots in Ashley,* 122 Ill. 297.) The complainant was not without a remedy at law to compel a performance by the assessor or board of the duty declared by the statute, so that one class of property should not be assessed on the lower basis than the property of the complainant, but the court could not give the relief asked for by the bill without doing an injustice to all other owners of similar property who were assessed on substantially the same basis of valuation, and the shares of stock were finally valued by the board of review at much less than they should have been valued under the law. The complainant had no equitable right to have a reduction of the valuation fixed by the assessor.

The decree is reversed and the cause is remanded, with directions to dismiss the bill.

*Reversed and remanded, with directions.*