(No. 36184.

THE PEOPLE *ex rel.* HARLOW MILLER, County Collector, Appellee, *vs.* JOHN DOE *et al.*—(IVA LUX, Appellant.)

*Opinion filed May 19, 1961.*

212

BERRY & O'CONOR, and THOMAS R. FLOOD, both of Streator, for appellant.

ROBERT E. RICHARDSON, State's Attorney, of Ottawa, (JOSEPH E. LANUTI, Assistant State's Attorney, of counsel,) for appellee.

Mr. JUSTICE BRISTOW delivered the opinion of the court:

The defendant Iva Lux appeals directly to this court from a judgment of the county court of La Salle County overruling her objections to the county treasurer's application for judgment for 1958 taxes, which the objector had

paid under protest. Her objection challenges the validity of township multipliers applied by the board of review of La Salle County to assessed values of property in Bruce Township of said county for 1958, pursuant to provisions of the Revenue Act. Ill. Rev. Stat. 1957, chap: 120, par. 589(5).

Inasmuch as this suit involves the revenue directly, the appeal properly comes to this court direct from the county court.

The assessor's books for Bruce Township real estate, for both the 1954 and 1958 quadrennial assessments, used two basic classifications of "Lands" and "Lots." The "Lands" assessment book includes all real estate in the township which is not platted into lots both inside and outside of the city of Streator. Lands included in such classifications are variously used for farm, residential, business and industrial purposes. The "Lots" assessment books include all real estate in the township which is platted into lots, both inside and outside the city of Streator.

In 1957, the Illinois Department of Revenue certified a multiplier of 1.0989 to be applied to the assessed value of all property in La Salle County under its general powers of equalization, such multiplier in effect giving approximately a 10% "across the board" increase in assessed values.

In the 1958 quadrennial assessment, the Bruce Township assessor reduced the final equalized assessment figures of 1957, which had been obtained by application of the State multiplier, by approximately 20% on 4690 "lots," the remaining "lots" which were not so reduced being largely vacant "lots" of small valuation. As to "lands" the assessor reduced the final equalized assessment figures by approximately 10%. The total equalized assessed value after application of the State multiplier in 1957 was $4,944,850 for "lands" and $34,777,700 for "lots." The assessor's valuations for 1958 of the same "lands" was $4,518,570 and the same "lots" was $28,770,390. After giving effect to im-

provements on existing structures, new construction, and losses in value by fire or demolition, a reduction in equalization value of approximately 10% for "lands" and 20% for "lots" is apparent in the assessments.

The assessments as made by the assessor for the 1958 quadrennial, as modified by the supervisor of assessments, was duly published in the Streator Daily Times Press. Thereafter individual complaints were filed with and heard by the board of review and resulting adjustments in individual assessments made.

The board of review then proceeded to publish a notice on March 25, April 1, and April 8, 1959, that it proposed to increase the 1958 quadrennial assessment of all real estate, including improvements, in Bruce Township, and the 1958 assessment of all personal property other than passenger automobiles, trucks, busses, trailers and capital stock by 20% and that a public hearing would be held by the board on April 13, 1959, at the Ottawa court house concerning said proposal.

A hearing was held on such date at which approximately 50 people were present with legal counsel. After the hearing, a written order was signed by the board of review members and incorporated in its records that the assessment for Bruce Township for the 1958 quadrennial "*   *   * shall be increased by 20% on all lots, including improvements and shall be increased by 10% on all *farm* lands including improvements; and the present assessment  *  *  * shall be increased 20% on all personal property provided such increase shall not apply to the present assessment *   *   * on all passenger automobiles, trucks, busses, trailers, capital stock, grain, hay and livestock." (Italics supplied.)

The board of review thereupon caused every tract of property in the "lands" book to be increased by 10% regardless of the use of such land for residential, commercial, industrial or farm purposes, and every tract in the "lots"

books to be increased by 20%. In the "lands" book there were a total of 406 tracts, of which 182 were used for residential, business or industrial purposes, and the remaining 224 tracts were used for farm purposes. On May 12, 1959, the board of review reported to the Illinois Department of Revenue that the assessed value of "lands" in Bruce Township had been increased 10% and that the assessed value of "lots" in Bruce Township had been increased 20%.

The property of objector appellant consists of an improved residence lot in the city of Streator assessed at $3,420 which was increased by application of the disputed multiplier 20% to $4,100. There were 153 properties used for residence purposes in Bruce Township similar to the objector's which were increased only 10% by application of the multiplier. There were instances where one property used for residence purposes was increased 10% and other properties of similar use located either adjacent thereto or across the road or in the same area were increased 20%. Numerous comparable situations exist between the assessment of various properties used for similar commercial and industrial purposes, since some of each were located on property listed in the "lands" and some in the "lots" books.

The authority of the board of review to establish and apply "township multipliers" is derived from the Revenue Act (Ill. Rev. Stat. 1957, chap. 120, par. 589) which, so far as pertinent, provides as follows:

"In counties containing less than 500,000 inhabitants, the board of review shall, in any year, whether the year of the quadrennial assessment or not:

\* \* \*

"(5) Increase or reduce the entire assessment of either real or personal property, or both, or of any class included therein if, in its opinion, the assessment has not been made upon the proper basis, or equalize the assessment of real or personal property, by increasing or reducing the amount thereof, in any township, or part thereof, or any portion of

the county as may, in its opinion, be just, but the assessment of any class of property or of any township or part thereof, or any portion of the county, shall not be increased until the board shall have published a notice in a newspaper of general circulation published in the county, of such proposed increase and shall have given the owners of the property affected, or any one representing them, or other citizens of said territory, an opportunity to be heard within 20 days after the date of such publication."

It is urged by appellant that the attempted horizontal rise of the Bruce Township assesssments by application of the "township multiplier" is void for four reasons: first, that both the order and increase by the board are void for failure to conform to the published notice; second, that the increase exceeds the authority of the board in that there is no reasonable basis for the purported classification, and actually increases property in the same classification by different percentages, thereby violating the United States and Illinois constitutions; third, that the board cannot order increases in certain classes of property and then actually make increases in different classes of property in different amounts; and fourth, that the board action amounts to the increase of individual assessments without notice in violation of the due-process clauses of the Federal and State constitutions.

The appellee contends that the application of the "township multipliers" was valid because, first, the board proceeded according to the statutory authority; second, the board, after hearing had, can set up smaller percentages of increase than those proposed in the notice; and third, the burden of proof required of the tax objector was lacking.

The statutory authority for the board action above set forth provides for the giving of notice and the manner of giving it. The notice given in this case was that the board proposed to increase the assessed value of all real estate 20%. Appellant urges that the board classified property

entirely differently and at different rates in its action than in the notice it gave by publication, thereby exceeding its jurisdiction, and that the order and increases made pursuant to it are thereby void.

There can be no question but that the notice and hearing required by the statute are jurisdictional and a prerequisite to board action in establishing a "township multiplier." (*People ex rel. Bracher* v. *Abraham,* 295 Ill. 582; *People ex rel. Rea* v. *Nokomis Coal Co.,* 308 Ill. 45; *People ex rel. Hicks* v. *Lycan,* 314 Ill. 590.) Here notice was given but the action taken was not in exact conformity with the notice. This precise question as to the validity of variation as here made from the action proposed in the notice seems to be of first impression in this court. In the cases of *People ex rel. Bracher* v. *Orvis,* 301 Ill. 350; *People ex rel. Ferguson* v. *Schlitz Transfer Co.* 333 Ill. 333; and *People ex rel. Lunn* v. *Chicago Title and Trust Co.* 409 Ill. 505, the notices involved were all in broad terms and were not limited to any specific proposed percentage of increase. In *People ex rel. Murray* v. *City of St. Louis,* 291 Ill. 600, notice was given of a hearing on a proposal to assess the approaches to a bridge, and based on such notice the entire bridge was assessed. The notice was held sufficient in view of the fact that the same persons owned the bridge who owned the approaches thereto, and that they appeared at the hearing.

In *People ex rel. Bracher* v. *Vail,* 296 Ill. 61, a board of review adopted a resolution raising the valuation of real estate throughout the county, gave statutory notice of hearings as to why the assessment should not be increased, and after several hearings the books were signed and the board adjourned, the original resolution remaining unchanged. In holding such board action improper, the court said: "* * * the board evidently regarded its resolution as the final decision of its determination to increase the assessment and made no other order or record of its decision, but the increase remained as fixed by the resolution. * * * It

was equivalent to a final determination of the question in advance of hearing, and unless the board could be convinced the decision was wrong it should stand. That was not a compliance with the purpose and spirit of the statute requiring notice and an opportunity to the property owners to be heard. They were entitled to a hearing before the question was decided, but they were not given that privilege."

The *Vail case* and other cited cases clearly indicate that the purpose and spirit of the statute requiring notice is to afford a hearing to property owners before the question of the amount of increase, if any, is finally decided. The statute here in question directs publication of notice of the *proposed* increase, not the final increase. The *Vail case* prohibits the board of review from determining in advance exactly what increase of rates it will make and in which classes. The argument of the objectors would require the board of necessity to decide the matter in advance, because according to their argument if an order is entered different in any respect from the proposed increase published in the notice it would be invalid. If such were the case there would be no purpose in any property owners appearing at the hearing because they would know in advance that the board was limited by the terms of its published notice and could not depart therefrom. Such argument, if valid, would destroy the very purpose of the notice and opportunity to be heard. In the instant case notice of the proposed increase was directed to all property owners in Bruce Township and thereby they were put on notice that any and all of them could appear and object and possibly influence the board to change its opinion as to imposing the proposed rate of increase and possibly to make no increase at all. The legislative wisdom in providing for such notice was demonstrated by the fact that the property owners at such hearing did prevail upon the board to change its decision. To say that the board of review is limited in its action to the proposed increase stated in its notice, and cannot reasonably modify, reduce

or limit the rate of increase, either in whole or as to different classifications of property, as a result of such hearing, would result in a destruction of the spirit, purpose and intention of the notice required by the statute. The board gave notice of hearing on a proposed increase of assessed values as required by the statute, and thereby had jurisdiction to enter an order within the limits of such proposed increase deemed appropriate and reasonable as a result of such hearing, without being strictly limited to adopting or not adopting the increase proposed.

The objector also argues that the equality and uniformity of taxation requirements of both the Illinois and Federal constitutions are violated because there is no reasonable basis for the classifications used and because properties actually in the same classification were increased in assessed values by different percentages. There is no argument over the fundamental principle that taxes must be equal and uniform among members of the same class. (Ill. const. of 1870, art IX, sec. 1; U.S. const., amendment XIV, sec. 1; *People ex rel. Wangelin* v. *Gillespie,* 358 Ill. 40; *First National Bank of Urbana* v. *Holmes,* 246 Ill. 362.) Likewise, there is no argument over the principle that a classification of persons may not be arbitrary or capricious, and the uniformity requirements may be violated by including in a class of property that which in fact is not within the class or by excluding property which is properly within it. *Ohio Oil Co.* v. *Wright,* 386 Ill. 206; *City of Chicago* v. *Ames,* 365 Ill. 529; *People ex rel. Toman* v. *Olympia Fields Country Club,* 374 Ill. 101.

The board of review action in question consisted of applying a certain percentage of increase to all "lots," whether improved or unimproved (referring to all lots listed in the "lots" books of the assessor), and a different percentage of increase to "lands" (referring to all lands listed in the "lands" books of the assessor). Objector's contention is that all properties used for residential purposes

should be in the same class, all used for grocery store purposes in the same class, all used for bowling alley purposes in the same class, all used for industrial purposes in the same class, etc., regardless of whether such properties were in the suburban area or in the city, and regardless of whether the properties were platted or unplatted. It is argued that the classification of property must be determined from the uses to which it is put and that all property of like use and character must be treated the same.

The case cited by objector most nearly persuasive of this contention is *People ex rel. Lindsay* v. *Palmer,* 113 Ill. 346, in which it was held that the mere fact that certain residential property situated within the city of Danville was unplatted into lots did not justify treating it within the classification of "lands" rather than "lots." In that case the State Board of Equalization deducted 3% from the equalized valuation of "lots" and added 5% to that of "lands" in Vermilion County, after the county board had added 7% to "lands" in Danville township but had left the assessment of "lots" in Danville unchanged. Because the objector's land was unplatted, the board of review considered it as "lands" in applying such multipliers. The court did say in its opinion that it regarded as too strict a construction the argument that property could not be classified under "lots" if it had never been platted and laid out into town lots by the owner according to the pertinent statute covering the same. It was observed in such connection that it is the situation of the property and the uses to which it is put which should determine its character under this classification. The court then proceeded to state that the property in question was surrounded on all sides by streets of the city, consisted of 4.88 acres, was used as a residence by the owner, and was larger than ordinary city lots but not larger than a block or out-lot might be. The court thereby reached its conclusion that the property was a city lot in fact, though not laid out and platted as such, and fell in the class of city

lots within the design and intention of the statutory classification. Such case is no authority for the proposition that classification of real estate for taxation as "lands" or "lots" is an improper basis of classification.

A case very analogous to the instant case is *People ex rel. Lunn* v. *Chicago Title and Trust Co.* 409 Ill. 505. There a board of review made a horizontal increase of lands in the amount of 25%, of lots in the amount of 100%, and improvements in the amount of 50%. The objectors contended that the increases were arbitrary and unreasonable. In affirming the increases and the classifications there involved, this court said: "The short answer to this is that it was necesary to increase the values of tracts and lots by different percentages in order to make their assessed valuations uniform. Furthermore, section 20 of the Revenue Act, (Ill. Rev. Stat. 1947, chap. 120, par. 501,) providing for the valuation of real property, refers to tracts and lots, and subparagraph 5 of section 108 (Ill. Rev. Stat. 1947, chap. 120, par. 589,) in authorizing boards of review to increase an entire assessment of real property or an included class, does not impose any limitation upon the classification of real property. The classification of real estate into lands and lots being impliedly authorized by section 20 and not prohibited by section 108, and being reasonably necessary to equalize the assessment in Warren township, it cannot be said that the action of the county board in so classifying real estate was arbitrary or capricious."

The above quotation applies with particular force to the instant case. It, with the decisions in *People ex rel. Toman* v. *Olympia Fields Country Club*, 374 Ill. 101; *People ex rel. Toman* v. *Pickard*, 377 Ill. 610; *People* v. *Southwestern Bell Telephone Co.* 377 Ill. 303; *State* v. *Local Board of Review*, 225 Ia. 855, 283 N.W. 87;. and *Fromkin* v. *State*, 158 Neb. 377, 63 N.W.2d 332, indicate that a classification of real estate into lands and lots, for the purpose of applying a different per cent of increase to each classification, is not

arbitrary or capricious, nor does it violate the constitution or destroy the constitutional requirement for uniformity of taxation.

It is further argued that the entire horizontal increase in assessed values is void because the board of review actually made increases in different classifications and in different amounts than that determined in the board's order made pursuant to the hearing. The notice was of a proposed increase of 20% on all real estate. After the hearing the board entered an order providing for the assessment on all "lots" to be increased 20% and for the assessment on all "farm lands" to be increased by 10%. Thereafter the board actually increased the assessed value of all "lots" by 20% and increased the assessed value of all properties included in the assessor's books under the heading "lands" by 10%, including therein not only properties used for farm purposes but also certain properties used for residential, commercial and industrial purposes. Appellant argues that the published notice classified all real estate in Bruce Township into one class, that after the hearing pursuant to such notice the board entered an order reclassifying the real estate into two classes, "lots" and "farm lands," that thereafter the board had no authority to make a different horizontal increase without holding another hearing, and that the action finally taken was beyond the scope of the board's authority.

It is admitted that the board of review is a creature of statute, that it has only such powers as are expressly given it by the legislature, and that it will not be presumed that the board has any powers other than those delegated to it by plain and specific language. (*People ex rel. Carr* v. *Keogh,* 306 Ill. 323; *People ex rel. Shirk* v. *Glass,* 9 Ill.2d 302; *People ex rel. Ferguson* v. *Schlitz Transfer Co.* 333 Ill. 333.) Under the statute in question the board has been expressly given power to increase or reduce the entire assessment of either real or personal property, or both, or of any class included therein, or equalize the assessment there-

of, provided no increase of assessment shall be made until a notice of the proposed increase is published and a public hearing had. From what has heretofore been said, the board in this case held a lawful hearing and had jurisdiction to take the action it did. What was the nature and effect of such action?

It is well settled that the board's action must be determined from the record it makes, that it can act only by making a written record of its action, and its actions can be shown only by the record it makes. (*People ex rel. Shirk* v. *Glass,* 9 Ill.2d 302; *People ex rel. Ferguson* v. *Schlitz Transfer Co.* 333 Ill. 333; *People ex rel. Bracher* v. *Vail,* 296 Ill. 61; *People ex rel. Bracher* v. *Abraham,* 295 Ill. 582.) Objectors argue that the record is the order made by the board and the controlling criterion of its action.

However, the record of the action of the board of review is to be found not exclusively, nor even primarily, from such single order, but from the assessment books signed and sworn to by the members of the board of review as required by statute, as well as other written records of the board. (*People ex rel. Greer* v. *Hunt,* 311 Ill. 291; *People ex rel. Bracher* v. *Orvis,* 301 Ill. 350; *People ex rel. O'Connell* v. *Chicago Tunnel Co.* 263 Ill. 253.) In the *Orvis case* it is noted that the statute does not require that the minutes of the board be put in evidence showing the vote of each member on its act of equalization on application for judgment of taxes. In the *Hunt case* it was stated that the only record the board is required to keep of its actions is to note what it does on the tax books.

The tax or assessment books introduced in evidence clearly show that, in 1958 and the prior quadrennial, the only real estate classifications used by the board of review were two in number, "lots" and "lands" as heretofore described, and that such classifications covered all real estate in the township. The assessment books also show that neither the assessor nor the board of review had classified

real estate in the township as to farm, residential, commercial and industrial classes. The assessment books showed that for the 1958 quadrennial the board of review had increased "lot" assessments by 20% and "land" assessments by 10%. In addition, a written report was made to the Illinois Department of Revenue by the board informing the Department that "lots" had been increased 20% and "lands" 10% in Bruce Township. Taxes could not be extended and collected on the basis of the minutes of the board alone.

The published notice and order entered, in view of the assessment books, do not establish a classification of real estate as contended by appellants but the classification is established by the assessment books. Regardless of the terminology "farm lands" used in the minutes, the significant records of board action, that is, the assessment books, show a determination and decision by the board after notice and hearing to make an increase of assessed values of the two existing classes of real estate for purposes of equalizing assessments. That is to say, the record of the board's action shows that it has equalized the assessment of real estate by increasing the assessment of all classes included therein, at different rates, as empowered by statute, after giving the required and jurisdictional notice of a proposed increase and holding a public hearing thereon.

Finally, appellant urges that the increase in assessments made by the board of review actually amounts to increases in individual assessments without notice or opportunity to be heard and thereby deprives the taxpayer of her property without due process of law. The argument advanced on such point is as follows: the raise in assessments was not a uniform raise of all of the property in Bruce Township, it was not a raise of all of the property of a particular class, different properties of the same type and similarly situated were raised by different percentages, consequently the board made individual raises on various properties without an opportunity to each property owner to be heard on each

raise. From what has heretofore been said it is apparent that such argument is not well taken. The board had statutory power and jurisdiction to enter an order for a horizontal increase in assessed values by class pursuant to statutory notice properly given; the classification of real estate into "lots" and "lands" for the purpose of applying a different per cent increase to each was not arbitrary nor capricious and did not violate the uniformity requirements of the constitution; and the action taken by the board in applying the increases was not at variance with the board's order and determination. The premises of appellant's argument on this point being fallacious, the conclusion drawn therefrom is fallacious: the principles of law set forth in the cases cited by appellant are sound and valid but inapplicable. A proper notice having been given and hearing held on the horizontal increase no violation of due process was had.

Appellant has continually emphasized and asserted that parts of the same property were raised by different percentages by the multipliers and that properties of the same type situated only blocks apart and similar in use were subjected to different percentage increases. The simple answer thereto is that all of the compared properties are either classified as "lands" which were reduced by the assessor 10% or as "lots" which were reduced by the assessor 20%, and in order to equalize them it was necessary for the board of review to raise them in the same proportion. Had the reduction made by the assessor been allowed to continue, the uniformity established by the final assessed valuation for 1957 after application of the county multiplier would have been completely destroyed. Invalidation of the township multipliers as asked by appellant in this case would result in inequality and lack of uniformity. Owners of "lands," as compared to owners of "lots," would find themselves in a position where their property was assessed at a greater proportion of its fair, cash value than was the property of those owners of "lots" in the same township. This would

result in the very lack of uniformity which must be established in order to prevail in a tax objection proceeding. In order to maintain such uniformity as was established in 1957 it was the duty of the board of review under the Revenue Act to reverse the unequal or discriminatory changes made by the local assessor of Bruce Township.

From what has heretofore been said, the county court of La Salle County properly overruled the tax objections to the township multipliers applied in Bruce Township for 1958, and its judgment is affirmed.

*Judgment affirmed.*