*In re* APPLICATION OF McHENRY COUNTY COLLECTOR.—(AUDREY WALGENBACH, McHenry County Collector, Plaintiff-Appellant, *v.* CHICAGO AND NORTHWESTERN RAILWAY CO. *et. al.*, Defendants-Appellees.)

Second District    Nos. 80-53, 80-340 cons.

Opinion filed December 8, 1980.

Theodore J. Floro, State's Attorney, of Woodstock (Susan Fayette, Assistant State's Attorney, of counsel), for appellant.

Abbamonto, Szura & Wagner, of Cary, for appellees.

Mr. JUSTICE UNVERZAGT delivered the opinion of the court:

Chicago and Northwestern Railway Co. and certain other taxpayers paid their assessed taxes for the year 1978 under protest contending that the 1978 assessment was invalid as to their property because no proper notice was given of an increase in the equalization factor as applied by the McHenry County Board of Review to their property. The county made application for judgment against the protesting taxpayers who filed objections to the application. After a hearing on the merits, the circuit court gave judgment for the taxpayers for the amount protested, which was based on the increase in the assessments due to certain equalization factors added to the assessment figures by the Board of Review. This appeal followed.

In May 1976 the McHenry County Board of Review published notice of "tentative" multipliers to be applied to the assessment figures for real estate taxes for the quadrennial year 1975, payable in 1976. In the townships of Algonquin and Dorr the multipliers were positive factors

which increased the assessments, Algonquin's tentative multiplier being 1.096% and Dorr's being 1.04%. On June 3, 1976 the board, without further hearing, published the "final" multiplier, which was the same as the tentative or proposed figure for Dorr Township but was increased from 1.096% to 1.11% for Algonquin Township. The final notice published on June 3 stated that the figures set out below for the various townships, including Algonquin and Dorr, were "for the tax year 1975, payable in 1976."

In 1977, the Board of Review applied the same multiplier, 1.11%, to Algonquin Township and 1.04% to Dorr Township, as had been prescribed for the 1975 taxes payable in 1976 and the objectors paid the resulting tax under protest contending that the assessed valuation of their property had been increased without notice to them. Moreover, the tax objectors residing in Algonquin Township contended that their assessment was illegal because the Board of Review published a notice indicating a multiplier of 1.096% and then actually applied a factor of 1.11% without further notice or hearing on the proposed increase. The trial court, after a hearing, gave judgment for the tax objectors, reducing their tax by the amount of the multipliers for Algonquin and Dorr counties.

In this appeal the county contends that the taxpayers *were* given notice of the application of multipliers in 1976 and that this notice was sufficient to cover the remaining years, 1977, 1978 and 1979, of the quadrennial. The county points out that the Board of Review has no authority to make a change or modification during a quadrennial period for one year only, citing *People ex rel. Carr v. Keogh* (1922), 306 Ill. 323, and *People ex rel. Carr v. Chicago Dock & Canal Co.* (1923), 306 Ill. 399; therefore, it must be assumed that a change in the assessment at the beginning of a quadrennial year is intended and should be understood as being for the entire quadrennial period. The county argues it is logical to extend the same limitation to the equalization function of the Board of Review. Thus, the county contends that the publication of the proposed multiplier in 1975 was sufficient notice to extend the increase caused by the multiplier to the whole quadrennial period, being taxes payable in 1976 through 1979. Nor, the county says, was it beyond the Board of Review's authority to make a change in the multiplier from 1.096% to 1.11% for Algonquin Township. This, the county argues, was within its discretion in carrying out the mandate to equalize assessments. The county makes a distinction between assessment and equalization. As to the latter function, it is contended by the board that it is within its discretion to make such adjustments as are required to justly apportion the burden on taxable property as between taxing districts, and it cites the cases of *People ex rel. Bracher v. Millard* (1923), 307 Ill. 556, and *People ex rel. Bracher v. Orvis* (1921), 301 Ill. 350. However, we do not find these

cases apposite to the point at issue here. This case does not, as did the cited cases, deal with the general discretion of the Board of Review under its equalization powers but rather with the specific requirements of *hearing and notice under subsequent amendments to the Revenue Act.*

The county apparently takes the position that if a notice is given and a hearing afforded at the "tentative" or proposed stage of the equalization process, that is sufficient to satisfy due process and further notice and hearing are not required, as to the final multiplier. This might be true as a general proposition, but we consider it an untenable argument in this particular case. Here the notice actually misstated the duration of the application of the equalization factor and also the proposed figure for Algonquin Township was exceeded and the final resolution of the board was not within the proposal submitted at the hearing. The county cites *People ex rel. Miller v. Doe* (1961), 22 Ill. 2d 211, as authority for the action of the Board of Review in this case in increasing the proposed multiplier from 1.096% to 1.11%, but we do not read that case as condoning an increase in the assessment figures without notice and hearing. In *Miller v. Doe*, the Board of Review first proposed increasing assessments in all real estate in the township by 20%. After the hearing on the proposal, it adopted a resolution which was actually implemented, whereby the real estate in the township was divided into two classes, being either "lands" or "lots" and "lands" were increased 10% whereas "lots" were increased by 20%. A certain taxpayer objected to his 20% increase in assessment, contending that the board had no authority to depart from the proposed figure by dividing the real estate in the township into "lands" and "lots" and assigning a different percentage of increase to each. The court rejected this contention, and affirmed the board's classification. In its opinion, the court cited *People ex rel. Bracher v. Vail* (1920), 296 Ill. 61, which emphasizes that notice and hearing must occur *before* the final decision of the board and where the board has proposed a certain percentage increase and then held a public hearing on the question, the board could not regard its initial proposal as the final resolution of the matter but the resolution must come *after* the hearing.

▪▮ In the *Miller v. Doe* case, the court noted that the final decision of the board was not made until *after* the hearing and the fact that it was not in exact conformity to the original proposal did not require a new and separate hearing. The court said:

> "The board gave notice of hearing on a proposed increase of assessed values as required by the statute, and thereby had jurisdiction to enter an order within the limits of such proposed increase deemed appropriate and reasonable as a result of such hearing, without being strictly limited to adopting or not adopting the increase proposed." 22 Ill. 2d 211, 219.

The language "within the limits of such proposed increase" should, however, be noted as distinguishing the cited case from that which we consider here. In the case before us the increase was *not* within the limits of the proposal noticed and discussed at the hearing. The divergence was not substantial in this case and we may assume the Board of Review's decision to increase the equalization factor from 1.096%, as proposed, to 1.11%, was done conscientiously to bring the Algonquin Township into parity with the other taxing districts. However, we believe such increase required a further notice and hearing before it was implemented. To hold otherwise would, we think, be to invite endless speculation and argument over the degree of departure from the original proposal which would be small enough to dispense with another notice and hearing. Following the case of *People ex rel. Miller v. Doe* (1961), 22 Ill. 2d 211, we think any differential which is outside the limits of the proposed increase—that is more than the proposed increase—requires a notice and hearing pursuant to section 108(5) of the Revenue Act of 1939 (Ill. Rev. Stat. 1977, ch. 120, par. 589(5)). Thus we agree with the trial court that the increase in the equalization factor for Algonquin Township in this case from 1.096% to 1.11% was invalid.

■■ As to the contention that the publication of the equalization factor in 1976 for 1975 taxes, payable in 1976, was sufficient to give notice for all four years of the quadrennial period, whatever might be the merits of this argument in another case we reject it here because in the case before us the notice of proposed increase in the equalization factor specifically denoted it as being "for the tax year 1975 payable in 1976." We agree with the appellees that the notice was misleading in referring only to the tax year 1975 and that the increase cannot be extended through the four-year quadrennial on the basis of that specific notice. We regard the notice and hearing requirements of section 108(5) of the Revenue Act of 1939 as being for the protection of the taxpayers' rights and therefore mandatory and to be strictly followed. See *Andrews v. Foxworthy* (1978), 71 Ill. 2d 13, 19-20, where the supreme court quoted from the case of *People v. Jennings* (1954), 3 Ill. 2d 125, as follows:

" 'There are, undoubtedly, many statutory requisitions intended for the guide of officers in the conduct of business devolved upon them, which do not limit their power or render its exercise in disregard of the requisitions ineffectual. Such, generally, are regulations designed to secure order, system and dispatch in proceedings, and by a disregard of which the rights of parties interested cannot be injuriously affected. Provisions of this character are not usually regarded as mandatory unless accompanied by negative words importing that the acts required shall not be done in any other manner or time than that designated. But when

the requisitions prescribed are intended for the protection of the citizen, and to prevent a sacrifice of his property, and by a disregard of which his rights might be and generally would be injuriously affected, they are not directory but mandatory.'"

In this case the gratuitous statement that the increase was for the 1975 taxes payable in 1976 was misleading, and a misleading notice is no better and perhaps worse than no notice at all.

For the reasons stated above, the judgment of the circuit court of McHenry County is affirmed.

Judgment affirmed.

NASH and VAN DEUSEN, JJ., concur.