*In re* APPLICATION OF JACK L. ANDERSON, County Treasurer (Jack L. Anderson, County Treasurer, Applicant-Appellant, *v.* William Apostalakis *et al.*, Objectors-Appellees).

Second District   No. 83—425

Opinion filed April 17, 1984.

Fred L. Foreman, State's Attorney, of Waukegan (James C. Bakk, Assistant State's Attorney, of counsel), for appellant.

Robert John Anderson, of McKenna, Storer, Rowe, White & Farrug, of Waukegan, for appellees.

JUSTICE LINDBERG delivered the opinion of the court:

This is an appeal from judgments in cases consolidated in the circuit court of Lake County ordering refunds to taxpayers who made payment of their 1980 real estate taxes under protest and denying the taxpayers' request for interest on those refunds.

The central issue presented on appeal is whether the publication by the Lake County Board of Review (Board) gave proper notice to these taxpayer-objectors that their 1980 assessed valuations would be increased by the amount of the 1979 equalization factors.

William Apostalakis and certain other taxpayers in Cuba, Ela, Vernon and West Deerfield townships in Lake County paid their real estate taxes for the year 1980 under protest contending that the 1980 assessments were invalid as to their properties because no proper notice was given of an increase in their assessments due to the application of the 1979 equalization factors as adopted by the Board for the

1979 tax year. The county collector (Collector) made application for judgment against the protesting taxpayers who filed objections to the application. The objectors and the Collector each filed a motion for summary judgment. The trial court allowed the Collector's motion, denied that of the objectors, and entered judgment for the Collector. Upon the objectors' motion for reconsideration, the trial court vacated its earlier order and gave judgment to the objectors for the amount protested, but denied their request for interest on those refunds. The Collector appeals from this order. The objectors filed a cross-appeal from the trial court's denial of interest on their refunds.

At the trial court level, the parties stipulated to the following facts. For the 1979 tax year, the Board published notice of "proposed" multipliers to be applied in Cuba (1.1719), Ela (1.1508), West Deerfield (1.1371) and Vernon (1.0753) townships typically as follows:

> "Under powers granted to Boards of Review under section 108(5), of the Revenue Act of 1939, as amended [citation], the 1979 Lake County Board of Review contemplates the following action:
>
>> Ela Township—Raise the value of all real estate subject to taxation *** in Ela Township, by application of a factor of 1.1508 to all such property ***.''

Following a hearing on each proposed township equalization factor, the Board published final notice listing the changes in the assessment of real property for 1979. The proposed figures were adopted for Ela, Cuba, and West Deerfield townships but the Board increased the equalization factor for Vernon from 1.0753 to 1.1075.

The parties agreed that the 1980 tax year was a nonquadrennial year for the various townships. *Prior to the delivery of the 1980 tax books to the township assessors, the assessed valuations for the 1979 tax year were increased by the amount of the 1979 multiplier.* Further, the list published by the Lake County assessor of changes made in the 1980 assessed valuations pursuant to the requirements of section 103 of the Revenue Act of 1939 (Ill. Rev. Stat. 1981, ch. 120, par. 584) did not include the properties of these objectors. In May of 1981, the Board published notice of a proposed change in the assessment of real property for the year 1980 as modified by the 1980 equalization factor. The notice of changes published for the 1980 tax year did not include the properties of these objectors and *did not contain a general statement that the assessed valuations of the objectors' properties had been increased from the preceding year by the percentage of the 1979 equalization factor.*

The sole issue presented by the Collector on appeal and to the

trial court was whether the objectors had been given proper notice regarding their initial, preequalization, 1980 assessment. More specifically the question is whether the publication of the 1979 equalization factors constituted notice for their initial 1980 assessments to be set at the same value as the 1979 equalized assessment rather than the 1979 initial assessment.

Section 108(5) of the Revenue Act of 1939 (Ill. Rev. Stat. 1981, ch. 120, par. 589(5)) permits boards of review to increase, reduce or otherwise adjust the assessments of any class of property. However, no assessment shall be increased until the Board has given notice by publication to the owners of the property affected of the proposed increase and an opportunity to be heard within 20 days after the date of publication.

While personal notice of the application of equalization factors is not required by statute (*Commonwealth Edison Co. v. Tucker* (1980), 86 Ill. App. 3d 630, 634, 408 N.E.2d 364)[1], the notice of hearing requirements prescribed in section 108(5) have been found to be for the benefit and protection of the taxpayers' rights and are therefore mandatory and require strict and timely compliance. *In re Application of McHenry County Collector* (1980), 91 Ill. App. 3d 49, 52, 414 N.E.2d 229, citing *Andrews v. Foxworthy* (1978), 71 Ill. 2d 13, 19-20, 373 N.E.2d 1332.

The issue of compliance with the notice and hearing requirements under section 108(5) was addressed by this court in *In re Application of McHenry County Collector*. There, protesting taxpayers objected to the application of a 1975 Board of Review equalization factor to their 1978 tax assessment. The 1975 tax year notice of the proposed increase in the equalization factor specifically stated it as being "for the tax year 1975 payable in 1976." In 1977, the Board applied the same multipliers to the 1978 assessments. The objectors paid the resulting 1978 tax under protest contending that their assessed valuations had been increased without notice to them. The trial court gave judgment for the objectors and this court affirmed. The court found the notice misleading in referring only to the 1975 tax year of the proposed increase in the equalization factor and concluded that the increase could not be extended through the remaining years of the quadrennial period on the basis of that specific notice. Any tax resulting from the in-

---

[1]Section 108 was recently amended, adding *inter alia*, section 108d (Ill. Rev. Stat. 1983, ch. 120, par. 589.4), to require personal notice to taxpayers when boards of review equalize assessments pursuant to section 108(5). However, as this amendment did not become effective until January 1, 1984, it is not relevant to this appeal.

crease in assessment which had been made without complying with section 108(5), the court held, was invalid. *In re Application of McHenry County Collector* (1980), 91 Ill. App. 3d 49, 52-53, 414 N.E.2d 229.

A similar result obtains here. In this case the 1978 assessment was increased by the 1979 equalization factor and the resulting 1979 equalized assessment was increased by the 1980 equalization factor to arrive at the contested 1980 equalized assessment. Such stairstep escalation of the original quadrennial assessment may indeed reflect legislative intent.

We suggest however, that such intent would be recognized only by its author. For example, section 103 speaks of "a list of real estate for which assessments have been added or changed *since the last preceding assessment*" (emphasis added) (Ill. Rev. Stat. 1981, ch. 120, par. 584), leaving the taxpayer to guess whether that would be the most recent year's "assessment" or "equalized assessment." This semantical morass is hardly enhanced by a further reference in section 111 (Ill. Rev. Stat. 1981, ch. 120, par. 592) that "[t]he assessment so completed by the board of review and certified to the county clerk, and as equalized as provided by law, shall be the assessment upon which *the taxes of that year* shall be extended by the county clerk." (Emphasis added.) Without more precise definition a taxpayer could easily conclude that equalized assessments are only for the tax year for which the notices of proposed equalization (Ill. Rev. Stat. 1981, ch. 120, par. 589(5)) and changed assessments (Ill. Rev. Stat. 1981, ch. 120, par. 590) were published. In short the Revenue Act of 1939 never specifically states that the most recent *equalized* assessment becomes "the last preceding assessment" to which the subsequent equalization factor is applied.

The trial court's memorandum order found that, as in *In re Application of McHenry County Collector*, it was far from clear from the notice published of the 1979 equalization factors that the increase in the objectors' assessment would extend to the next tax year. It also found that a taxpayer ordinarily would not realize the possible cumulative effects of such a notice for future tax years.

While the Collector maintains that the notice of the 1979 equalization factors did not contain fortuitous misleading statements as in *In re Application of McHenry County Collector*, as the objectors correctly point out, that case involved an attempt by the county to utilize the *same* equalization factor for the remaining years of the quadrennial period. Here, as the trial court observed, the objectors' 1980 assessments were being affected by two separate multipliers. The objec-

tors' 1980 assessments were increased by the amount of the 1979 equalization factors and then subject to equalization by the 1980 multipliers.

■ Further, it was not clear from either the 1979 or 1980 notice publications that the taxpayers' assessed valuations were being increased each year during a quadrennial period by the application of the previous year's equalization factors *and* the current tax year's equalization factors. The Collector's argument is without merit wherein he contends that as the objectors' 1980 assessed value was the same as their 1979 equalized value there was no "change" in the objectors' assessment such that they would have been entitled to additional notice for the 1980 tax year. Accordingly, a fair reading of the statute as presently drafted provides that the objectors were entitled to notice by publication due to a change in their 1980 assessment resulting from the application of the 1979 equalization factor. (Ill. Rev. Stat. 1981, ch. 120, par. 589(5).) The fact that the Board has no authority to make a change or modification in assessments during a quadrennial period for one year only (*People ex rel. Carr v. Keogh* (1922), 306 Ill. 323, 137 N.E.2d 816; *People ex rel. Carr v. Chicago Dock & Canal Co.* (1923), 306 Ill. 399, 138 N.E. 214), as the Collector notes, is not relevant to the issue here. In *Keogh* and *Chicago Dock*, it was held that once the level of assessment was ultimately determined for a quadrennial period, such assessment must remain constant for the remaining years of the quadrennial period. Any change in the assessment during this time must be done in the specific manner prescribed by the act. Consequently, *Keogh* and *Chicago Dock* support the objectors' contention that as the 1980 assessed valuation was increased over the previous year, without proper notice, the 1980 assessment was invalid. Accordingly, the trial court did not err in granting the objectors' motion for summary judgment.

■ Finally, regarding the refund due to the Vernon township objectors, as the Board failed to give proper notice to the objectors as to an increase in their 1980 assessments before 1980 equalization, the trial court properly reduced the amount of tax for the various townships, included Vernon, by the amount of the 1979 multipliers (*In re Application of McHenry County Collector* (1980), 91 Ill. App. 3d 49, 414 N.E.2d 229), and we need not consider the issue the Collector raises as to whether the refunds awarded to the Vernon township objectors should be limited to the difference between the proposed and applied 1979 multiplier.

The objectors cross-appeal from the trial court's denial of their request for interest on the ordered tax refunds. The objectors argue

that they are entitled to interest on their refunds under section 194 of the Revenue Act of 1939 (Ill. Rev. Stat. 1981, ch. 120, par. 675).

The legislature has recently amended section 194 of the Revenue Act of 1939 (Ill. Rev. Stat. 1981, ch. 120, par. 675), effective January 1, 1982, to provide for the payment of interest in cases of refunded real property taxes paid under protest. The amendment reads:

"Such amounts paid under protest and withheld from distribution shall be deposited by the collector in interest bearing accounts. If the final order of a court on the protest results in a payment to the taxpayer of all or a part of the taxes paid under protest and withheld, all or a proportional share of such interest earned during the pendency of the protest by the amount repaid to the taxpayers shall also be paid to the taxpayer. If the final order of a court on the protest results in a payment to the taxing districts of all or a part of the taxes paid under protest and withheld, the interest earned during the pendency of the protests by such taxes paid to the taxing districts shall be paid into the county treasury."

The trial court held that as the objectors' payment under protest accompanying their tax payments in the spring and fall of 1981 occurred prior to the effective date of the amendment, the objectors were not entitled to interest on the ordered refunds. The objectors on appeal argue that the event triggering section 194 is not when the notice of appeal is filed, but rather when the objection is filed in the circuit court after the payment of taxes under protest. As the objectors filed their objections in the circuit court to the Collector's application for judgment on January 19, 1982, after the effective date of the statute, the objectors maintain that section 194 entitles them to interest earned on the protested taxes. The objectors maintain to hold otherwise would defeat the intention of the amendment, which is to ensure that taxpayers paying taxes under protest would receive interest on the amount so protested. See *Rosewell v. LaSalle National Bank* (1981), 450 U.S. 503, 67 L. Ed. 2d 464, 101 S. Ct. 1221; *Shell Oil Co. v. Department of Revenue* (1983), 95 Ill. 2d 541, 449 N.E.2d 65.

■ In construing a statute, the language should be given its plain and ordinary meaning. (*City of East Peoria v. Group Fire Development Co.* (1981), 87 Ill. 2d 42, 46, 429 N.E.2d 492.) The amendment to section 194 provides the mechanism for taxpayers to object to the assessment of taxes. In order to obtain a tax refund under section 194, prepayment of real estate taxes under protest is a mandatory condition precedent to the filing of any objection to a tax assessment. (*People v. Hagerty* (1982), 104 Ill. App. 3d 240, 244, 432 N.E.2d 908; *In re*

*Application of Rosewell* (1979), 78 Ill. App. 3d 769, 773, 397 N.E.2d 232; see Ill. Rev. Stat. 1981, ch. 120, par. 716.) Thus, applying the clear and ordinary meaning of the statute, it is the filing of notice of protest accompanied by the payment of taxes that invokes the application of section 194 which would entitle the objectors to interest on the taxes withheld since the payment under protest. Accordingly, as the objectors' protests were filed prior to the effective date of the amendment to section 194, the trial court properly denied the objectors' request for interest on the ordered refunds.

The judgment of the circuit court of Lake County granting the objectors' motion for summary judgment and denying the objectors' request for interest on the ordered tax refunds is affirmed.

Affirmed.

NASH and HOPF, JJ., concur.